Carol BRILEY, Petitioner,

v.

NATIONAL ARCHIVES & RECORDS
ADMINISTRATION, Respondent.

No. 99–3413.

United States Court of Appeals,
Federal Circuit.

Decided Jan. 22, 2001.

Karen K. Howard, The Law Offices of Karen K. Howard, P.C., of Kansas City, Missouri, argued for petitioner.

John C. Einstman, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. On the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; Harold D. Lester, Jr., Assistant Director; and Katherine A. Barski, Attorney. Of counsel on the brief was Amy E. Krupsky, Attorney, Office of General Counsel, National Archives & Records Administration, of College Park, Maryland.

Before NEWMAN, LINN, and DYK, Circuit Judges.

DYK, Circuit Judge.

Petitioner Carol Briley is an Archivist, GS–11, at the National Archives and Records Administration's ("agency's") Harry S. Truman Library ("Library") in Independence, Missouri. She claims that the agency declined to upgrade her position and that her duties were improperly reduced in retaliation for engaging in protected whistleblowing activities. The Merit Systems Protection Board ("Board") rejected Briley's claim, finding that Briley had failed to exhaust her administrative remedies, that the agency did not take or fail to take a "personnel action," and that in any event, the agency had shown by clear and convincing evidence that it would have taken the same actions regarding Briley even absent her protected whistleblowing activities. We hold that petitioner has exhausted her administrative remedies, that Briley's change in duties which resulted from the Library's restructuring did not constitute a personnel action, and that substantial evidence supports the Board's determination that the agency would not have reclassified Briley's position as a GS–12 or created and promoted her to a new GS–12 position even absent her protected whistleblowing activities. We therefore affirm.

I

The basic facts of this dispute are set forth in the 157 page opinion of the administrative judge, and the administrative judge's findings are summarized below.

Petitioner Briley began work at the Truman Library on March 28, 1974, in a GS–05 archival position. She was promoted to GS–07 archivist in 1976. As the result of the settlement of a 1986 Equal Employment Opportunity ("EEO") sexual harassment complaint against Dr. George Curtis, her supervisor, the agency promoted Briley to a GS–09/11 archivist position. One year after settling her sexual harassment complaint, the agency promoted her to GS–11.

Following the settlement, Briley began to take part in the declassification work of the Truman Library. In 1988, Dr. Raymond Geselbracht joined the Library as the supervisory archivist and became Briley's first-line supervisor. Dr. Curtis then became her second-line supervisor. Also by 1988, Briley had responsibility for day-

to-day functioning of the Library's declassification program.

Briley alleges that beginning in May 1990 and continuing through May 1995, she made 42 separate disclosures protected under the Whistleblower Protection Act. *See* 5 U.S.C. § 2302(b)(8). The substance of these claimed disclosures apparently remained largely the same during this period. Half of the alleged disclosures concerned the access of another employee, Dennis Bilger, to classified documents and his compliance with applicable regulations. The parties agree that Briley made a protected disclosure on May 2, 1990, when she informed Dr. Geselbracht that Bilger had left collections containing classified information in open areas of the library. The rest of the alleged disclosures concerned security issues with the Library's vault. The parties agree that Briley made a protected disclosure when, on or before May 9, 1990, she reported to Dr. Geselbracht, Dr. Curtis, and others that contract security guards could disable the Library vault's alarm.

Briley alleges that her protected disclosures resulted in three adverse personnel actions. First, she alleges that in retaliation for her protected disclosures, the vast majority of her duties were taken from her on March 28, 1994, and that the agency subsequently failed to restore her original duties to her. Second, she alleges that the agency retaliated against her by failing to reclassify her position from GS–11 to GS–12. Third, she alleges that in retaliation for her protected disclosures, the agency failed to create a new GS–12 Nonsupervisory Archivist position and promote her to it.

The agency's alleged personnel actions took place in the context of Briley's longstanding efforts to win promotion to GS–12. In 1988, not long after assuming Bilger's declassification responsibilities, Briley began talking to Dr. Geselbracht about a promotion to GS–12. Dr. Geselbracht encouraged Briley to seek a promotion by obtaining a GS–12 position at another Presidential Library large enough to warrant a GS–12 archivist with expertise in declassification, and he reminded her that the Truman Library's declassification program was old and small. Briley, however, wanted a promotion to GS–12 without leaving the Truman Library.

In 1993, Briley continued to seek a promotion to GS–12. She believed that she was performing GS–12 work and that her position should be reclassified as a GS–12 position. She continued to complain to Dr. Geselbracht about her GS–11 classification.

Briley arranged a meeting with Dr. Curtis for December 10, 1993. She told Dr. Curtis that she wanted to be a GS–12. Dr. Curtis told her that he would contact the Office of Presidential Libraries and seek a determination of whether or not her position needed reclassification. There is some dispute over the rest of what transpired at the meeting. Briley claims that Dr. Curtis told her that he supported her request for a promotion. In contrast, Dr. Curtis claims that he never promised Briley a promotion. He also asserts that Briley told him her job was so stressful that she did not want to continue declassification work unless she received a promotion to GS–12.

After her meeting with Dr. Curtis, Briley also spoke with Dr. Geselbracht and told him that Dr. Curtis had promised her a promotion. Like Dr. Curtis, Dr. Geselbracht stated that Briley told him that she did not want to continue working on declassification unless she was promoted. Dr. Geselbracht interpreted this statement as an ultimatum, and he regretted not having an effective back-up for Briley. The administrative judge relied upon the testimony of Dr. Curtis and Dr. Geselbracht in finding that Briley had declined to continue declassification work unless she was promoted.

Dr. Geselbracht, who says he was concerned that the Library's declassification program was at risk, contacted the Assistant Director of the Eisenhower Library, who explained to Dr. Geselbracht that the Eisenhower Library used a team approach

to declassification, with lower-graded Archives Technicians doing a substantial portion of the work. Dr. Geselbracht devised such a team approach for the Library. He submitted his plan on March 8, 1994, and Dr. Curtis approved the plan on March 14, 1994. According to Dr. Geselbracht, one purpose of the plan was to assign a portion of Briley's declassification work to Archive Technicians, freeing Briley for more substantial Archivist duties. He also hoped that the program would become less dependent on any one person. Furthermore, the plan would be more flexible: it could expand or contract to meet current needs of the declassification program.

On March 28, 1994, Dr. Geselbracht informed Briley and other staff members of the restructuring plan. In his meeting with Briley, Dr. Geselbracht told her that there was no existing plan to promote her to GS–12. According to Dr. Geselbracht, he told her she was to focus on certain more substantive archival work. According to Briley, Dr. Geselbracht told her that she was to be removed from her position. The administrative judge, however, found that Briley retained an important role in the new declassification team, and that Briley refused to perform at least one duty assigned to her: training another employee to assist with declassification.

On May 27, 1994, Briley filed a grievance with Dr. Benedict Zobrist, the Library's director, asking to restore her previous duties and be converted to GS–12. Although she did not immediately claim that she had lost all of her duties, she later claimed that Dr. Geselbracht had taken away 98% of her duties. On June 7, Briley met with her union representative and Drs. Zobrist, Curtis, and Geselbracht to discuss her grievance. On June 13, in response to Briley's concerns about her duties being taken away, Dr. Geselbracht issued to Briley a memorandum outlining her duties under the new plan.

On July 14, 1994, in response to a request from Dr. Zobrist, Supervisory Position Management Specialist Jerry Pirtle, the chief of the agency's personnel classifi-

cation program, issued an advisory opinion concluding that Briley's position was and remained properly graded as a GS–11, based on standards issued by the Office of Personnel Management. On August 5, 1994, Dr. Zobrist denied Briley's grievance. He informed Briley that her work did not warrant reclassification to GS–12 and that the restructuring was consistent with principles of good management, as well as Briley's grade.

On September 6, 1994, Briley filed a request for corrective action with the Office of Special Counsel ("OSC"). She asserted, *inter alia,* that in retaliation for her making certain disclosures that Library management engaged in improper activities, the agency had downgraded her job responsibilities and refused to reclassify her position at the GS–12 level.

On January 6, 1995, following the OSC's failure to take timely action on her whistleblower claim, Briley filed an appeal with the Merit Systems Protection Board. On October 6, 1995, the administrative judge issued an Initial Decision. The administrative judge found that Briley had made protected disclosures; that Dr. Geselbracht and Dr. Curtis had knowledge of the disclosures; that the disclosures were a contributing factor in two personnel actions (the restructuring of Briley's duties and the agency's failure to promote her); and that the agency had failed to show by clear and convincing evidence that absent Briley's protected disclosures, Dr. Geselbracht and Dr. Curtis would have restructured Briley's duties and failed to promote Briley to GS–12. The administrative judge granted Briley's request for corrective action.

On December 1, 1995, after the agency petitioned the Board to review the administrative judge's decision, Briley filed an additional request for corrective action with the OSC. Briley's second OSC request was more comprehensive than her first. While Briley's first OSC letter reported only disclosures she made "commencing in April of 1994," Briley's second

OSC letter reported disclosures from 1990 through 1993. Briley sought thereby to insulate herself from the agency's charges that she had not properly exhausted her remedies before the OSC.

On July 19, 1996, the Board granted the agency's petition for review, vacated the administrative judge's initial decision, and remanded. First, the Board held that the administrative judge failed to make sufficient factual findings and analyze whether Briley's disclosures were protected. Second, the Board directed the administrative judge to further consider, in light of its opinion, whether Briley's change in duties or the agency's failure to promote her constituted a personnel action. Third, the Board noted that Briley's initial OSC complaint was limited to certain of Briley's 1994 disclosures and that the administrative judge had erred in not restricting his analysis to those disclosures. (The administrative judge's decision had been issued on October 6, 1995, prior to Briley's December 1, 1995, letter to OSC, which reported pre 1994 disclosures.) The Board also instructed the administrative judge to consider anew whether Briley had established that a protected disclosure was a contributing factor in any personnel actions and whether the agency showed by clear and convincing evidence that it would have taken the same personnel actions in the absence of any protected disclosures.

On remand, the case was assigned to a different administrative judge, who held a hearing on February 25–28, March 11–14, and May 15, 1997. On October 21, 1998, the administrative judge issued an Initial Decision and ruled in favor of the agency, dismissing Briley's appeal for lack of jurisdiction. The judge held that Briley had failed to exhaust her administrative remedies, that the agency did not take or fail to take a "personnel action," and that, in any event, the agency had shown by clear and convincing evidence that it would have taken the same actions regarding Briley even absent her protected whistleblowing activities. On June 29, 1999, the Board denied Briley's petition for review, and Briley

subsequently filed a timely appeal with this Court.

## II

■ Large portions of the briefs in this case are directed to retrying factual issues decided against Ms. Briley by the Board, but that is not our function. Pursuant to 5 U.S.C. § 7703(c), we must uphold the Board's decision unless we find it to be: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *See Chase–Baker v. Dep't of Justice,* 198 F.3d 843, 845 (Fed. Cir.1999). In addition, the Board's credibility determinations are "virtually unreviewable on appeal." *Rogers v. Dep't of Defense Dependents Sch.,* 814 F.2d 1549, 1554 (Fed.Cir.1987).

## III

■ Under 5 U.S.C. § 1214(a)(3), an employee is required to "seek corrective action from the Special Counsel before seeking corrective action from the Board." The Board's jurisdiction is limited to issues raised before the OSC. *See Ellison v. Merit Sys. Prot. Bd.,* 7 F.3d 1031, 1037 (Fed. Cir.1993). An employee must "inform the Special Counsel of the precise ground of his charge of whistleblowing" and "must 'give the Office of Special Counsel sufficient basis to pursue an investigation which might have led to corrective action.' " *Ward v. Merit Sys. Prot. Bd.,* 981 F.2d 521, 526 (Fed.Cir.1992) (quoting *Knollenberg v. Merit Sys. Prot. Bd.,* 953 F.2d 623, 626 (Fed.Cir.1992)). Briley bears the burden of showing that she sought corrective action from the OSC and that she exhausted her remedies there. *See Serrao v. Merit Sys. Prot. Bd.,* 95 F.3d 1569, 1574 (Fed.Cir.1996).

■ In a footnote, the Board held that Briley had failed to demonstrate that she had requested corrective action from the

OSC. *See* Initial Decision, *Briley v. Nat'l Archives and Records Admin.*, No. SL–1221–95–0183–B–1, at 151 n. 151, 83 M.S.P.R. 380 (M.S.P.B. Oct.21, 1998) ("Initial Decision"). The government urges that we affirm on this ground. We decline to do so, as we find that Briley complied with the requirement that she seek corrective action from the OSC.

On September 6, 1994, Briley filed with the OSC a complaint alleging that the agency downgraded her job responsibilities in retaliation for complaints she made "commencing in April of 1994" and refused to reclassify her as a GS–12. In addition, on December 1, 1995, Briley filed a second complaint with the OSC. This complaint stated that from 1990 to 1993, Briley had made allegations concerning security issues with the Library vault, Bilger's retention of his security clearance, and vault access by persons who lacked proper clearance. The Board found these disclosures overly vague and that Briley therefore had not properly exhausted her remedies before the OSC. However, the Board chose to address Briley's "new and more specific complaints" directly because requiring Briley to exhaust her remedies would result only in further delay. Initial Decision at 151–52 n. 151.

We disagree with the Board's analysis of Briley's allegations to the OSC. Briley in fact informed the OSC of the grounds for her charge of whistleblowing: that she had made allegations concerning both whether Bilger complied with security regulations and whether his security clearance should have been removed and also whether the Library vault complied with security-related rules and regulations. She alleged that the agency had retaliated against her by reassigning her duties and refusing to reclassify her as a GS–12. We recognize that in her hearing before the administrative judge, Briley gave a more detailed account of her whistleblowing activities than she did in her letters to the OSC. However, Briley's letters to the OSC nevertheless contain the core of Briley's retaliation claim. They gave the OSC sufficient basis to pursue an investigation, and they therefore satisfy Briley's obligation to seek corrective action and exhaust her remedies before the OSC.

The cases cited by the government do not support its contention that Briley failed to exhaust her remedies before the OSC. For example, in *Mintzmyer v. Dep't of the Interior,* 84 F.3d 419, 422 (Fed.Cir. 1996), the appellant alleged a set of retaliatory actions before the Board that she had not specified before the OSC. Here, in contrast, Briley informed the OSC of the basis for her retaliation claim; she then added further detail to her claim before the Board. In doing so, Briley complied with the requirement that she seek corrective action from the OSC.

## IV

To establish a prima facie case of retaliation for whistleblowing activity, an employee must show both that she engaged in whistleblowing activity by making a disclosure protected under 5 U.S.C. § 2302(b)(8) and that the protected disclosure was a contributing factor in a personnel action. *See* 5 U.S.C. §§ 1221(e)(1), 2302(b)(8). If a plaintiff establishes a prima facie case of retaliation for whistleblowing, corrective action must be ordered unless "the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." 5 U.S.C. § 1221(e)(2); *Carr v. Social Sec. Admin.,* 185 F.3d 1318, 1322 (Fed.Cir.1999).

A protected disclosure is a disclosure which an employee reasonably believes evidences "(i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8). Before the Board, Briley asserted that she made 42 separate protected disclosures. The first 21 disclosures dealt with issues regarding Bilger; the last 21 disclosures dealt with vault security. The Board found, and the government does not dispute, that the appellant en-

gaged in at least two instances of whistle-blowing activity. First, on May 2, 1990, Briley disclosed to Dr. Geselbracht that Bilger left collections containing classified materials in open areas of the Library, a disclosure which Briley reasonably believed concerned a non-trivial violation of the Department of Defense Information Security Program. Second, on or before May 9, 1990, Briley disclosed to Dr. Geselbracht, Dr. Curtis, and others that contract security guards could disable the Library vault's alarm, a disclosure which Briley reasonably believed violated a standard of the CIA's Manual of Physical Security Standards for Sensitive Compartmented Information Facilities.

The Board found that Briley's other 40 disclosures did not qualify as protected disclosures under 5 U.S.C. § 2302(b)(8). After reviewing the record, we have some concern that the Board improperly rejected disclosures which should qualify as protected under 5 U.S.C. § 2302(b)(8). For example, citing *Dep't of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), the Board held that it lacked jurisdiction to review Briley's claims regarding Bilger's security clearance approval. *See* Initial Decision at 83–84, 107. In *Egan*, the Supreme Court held that the Board does not have authority to review the substantive merits of the agency's decision to deny security clearance to the employee. *See Egan*, 484 U.S. at 526–30, 108 S.Ct. 818. This court has subsequently held that the Board lacks jurisdiction to review an employee's claim that his or her security clearance was suspended in retaliation for whistleblowing. *See Hesse v. Dep't of State*, 217 F.3d 1372, 1375–80 (Fed.Cir. 2000).

The situations in *Egan* and *Hesse*, however, are substantially different from this case: Briley claims that she was retaliated against because she raised questions about the appropriateness of Bilger's access to classified information. To redress Briley's claim, the Board would not necessarily be required to trespass on territory forbidden to it by *Egan:* it would have no need to overrule the agency's determination of

whether Bilger should or should not have access to classified information. The protection of classified information would remain "committed to the broad discretion of the agency responsible." *Egan*, 484 U.S. at 529, 108 S.Ct. 818. Instead, the Board would only be required to determine whether Briley made a disclosure which she reasonably believed violated a law, rule, or regulation related to security classifications. Nor does this case involve a question whether Briley's own security clearance was suspended in retaliation for whistleblowing, as in *Hesse*.

Nevertheless, we need not resolve this question here. The Board properly determined that two of Briley's disclosures were protected, and Briley therefore has met her burden of showing that she engaged in whistleblowing activity. It is true, of course, that if we relied only on those two protected disclosures, the four-year gap between the disclosures and the alleged personnel actions would present serious questions about whether the disclosures caused the alleged personnel actions. However, because we ultimately uphold the Board's determinations that Briley's change in duties did not constitute a personnel action and that even in the absence of Briley's disclosures, the agency would have failed to reclassify Briley as GS–12 or to create and promote her to a new GS–12 position, *see infra* at parts V and VI, the agency will not be required to take corrective action in this case, and we need not address this causation question.

## V

The Board also found that Briley failed to show that the agency took or failed to take a personnel action (as defined in 5 U.S.C. § 2302(a)(2)(A)) with respect to Briley. Briley alleges that the Board subjected her to three personnel actions in retaliation for her protected disclosures: a reduction in her duties, a failure to reclassify her position as a GS–12, and a failure to promote her to GS–12. We conclude that substantial evidence supports the Board's

determination that the change in Briley's duties which accompanied the restructuring did not constitute a personnel action. While the assertions that the agency's failure to reclassify or promote Briley constituted personnel actions are "non-frivolous" allegations sufficient to confer jurisdiction on the Board, *see Schmittling v. Dep't of the Army*, 219 F.3d 1332, 1336 (Fed.Cir. 2000), we do not need to decide the ultimate merits of those claims. Instead, we uphold the Board's determination that the agency has shown by clear and convincing evidence that it would have taken those actions in the absence of Briley's disclosures.

■ We begin with Briley's claim that the change in her duties under the Library's restructuring constituted a personnel action. At the time the agency changed Briley's declassification duties, the definition of "personnel action" included "any other significant change in duties or responsibilities which is inconsistent with the employee's salary or grade level...." 5 U.S.C. § 2302(a)(2)(A)(x)(1988). Effective October 29, 1994, Congress amended this provision by deleting the words "inconsistent with the employee's salary or grade level." 5 U.S.C. § 2302(a)(2)(A)(xi)(1994). In analyzing Briley's claims, the Board correctly applied the pre 1994 standard. This court has previously held that the 1994 amendment should not be applied retroactively to conduct that occurred before the amendment's enactment. *See Caddell v. Dep't of Justice*, 96 F.3d 1367, 1370–71 (Fed.Cir. 1996) (analyzing the 1994 amendment under *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). Thus, the Board's decision to apply the pre 1994 amendment standard was clearly correct.

Briley points to a document, which she characterizes as a stipulation with the agency, which she asserts demonstrates that most of her duties were removed by Dr. Geselbracht on March 28, 1994. Briley overstates the extent of the agency's concessions. The agency disagreed with many of Briley's claims regarding her duties, and it certainly never stipulated that virtually all of her duties were taken from her. Of course, the Library does indeed agree that many of Briley's duties were taken from her, and the Board did not find otherwise. These duties ranged from "attempt[ing] to declassify documents before they are submitted to agencies" to "changing the combinations of the safes inside the vault." Briley and the Library disagree on other questions involving her change in duties, such as whether Dr. Geselbracht told Briley not to do any declassification work at all. However, it is not necessary for us to decide exactly which duties were taken from Briley, as our focus is instead on whether Briley's post-restructuring duties were consistent with her grade level.

The Board held that Briley's post-restructuring duties were consistent with her grade level, and thus that her change in duties was not a personnel action within the meaning of the statute. This determination is supported by substantial evidence. Even after restructuring, according to the Library, Briley retained the most substantive duties of the declassification team: she remained the only person at the Library in charge of systematic review, which requires an archivist to review documents and declassify them herself, based on guidelines provided by the document's agency of origin. The Board also found that Briley had *refused* to perform at least one significant duty she was assigned after restructuring: training another employee to conduct "outgoing mandatory review." The Board noted that after restructuring, Briley was given mainly reference assignments, as well as the more demanding components of declassification. The Board found that "reference assignments provide the bulk of a GS–11 Archivist work." Initial Decision at 143. Thus, it held that Briley's post-restructuring duties, "although disdained by the appellant, are entirely consistent with her GS–11 Archivist grade." *Id.* Finally, because Briley's change in duties did not

constitute a personnel action, the agency's refusal to restore her duties did not constitute a personnel action either.

Briley contends that two other actions which the agency failed to take constitute personnel actions: the agency failed to reclassify Briley's grade from GS–11 to GS–12, and the agency refused to create a new GS–12 Nonsupervisory Archivist position and promote her to it. The Board rejected both of these contentions. On the first, the Board held that Briley had not shown she was entitled to reclassification. On the second, the Board determined that Briley had not "presented any evidence to show the Truman Library's decision not to fund a GS–12 Nonsupervisory position was improper." Initial Decision at 151. Although the Board's decision may be supported by substantial evidence, these questions are not without difficulties, such as whether the agency's discretionary decision not to create a new position can constitute a personnel action. Furthermore, as we discuss in the next section, we agree with the Board that there is clear and convincing evidence that even in the absence of Briley's disclosures, the agency would not have reclassified her position or created a new GS–12 position for her. Therefore, we will assume without deciding that both the agency's failure to reclassify Briley's grade from GS–11 to GS–12 and the agency's refusal to create and promote Briley to a new GS–12 Nonsupervisory Archivist position constituted personnel actions.

## VI

Even assuming that Briley succeeded in establishing her prima facie case, the agency is not required to order corrective action if it demonstrated "by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." 5 U.S.C. § 1221(e)(2); *Carr v. Social Sec. Admin.*, 185 F.3d 1318, 1322 (Fed.Cir.1999). The Board found that the agency would have taken the same personnel actions in the absence of Briley's disclosures. *See* Initial Decision at 151–55. Here, we will review the Board's findings regarding the two personnel actions we have identified: the agency's failure to reclassify Briley as GS–12 and its failure to create and promote her to a new GS–12 position.

■ The Board found that the agency had shown by clear and convincing evidence that it would not have reclassified Briley's position as a GS–12 position absent her disclosures. The Board cited the testimony of Supervisory Position Management Specialist Pirtle, who stated that he was the final arbiter of Briley's reclassification request. Pirtle audited Briley's position (based on her duties before the Library's restructuring) and found that it was properly classified as GS–11. Pirtle noted that much of Briley's work was appropriate for lower-graded Archives Technicians, which could have diluted Briley's grade below GS–11.

Although Briley considered her work similar to that performed by GS–12's at other Presidential Libraries, the Board noted that "[t]here is no evidence in the record to support [Briley's] claim that the scope of Truman Library's classified holdings generated work as complex as that performed" at other libraries. Initial Decision at 154. The Board also noted that Briley had not been given the team-leader or acting supervisory duties of those at other libraries with GS–12 classifications. In addition, the Board correctly noted that under federal regulations, classifications are performed by comparing an individual's duties with the relevant classification standards, not by comparing an individual's duties with the duties performed by other employees. *See* 5 C.F.R. §§ 511.601–511.616. Such comparisons would perpetuate existing misclassifications. Here, substantial evidence supports the Board's determination that the agency had shown by clear and convincing evidence that it would not have reclassified Briley's position as a GS–12 position, even absent her disclosures.

■ Second, the Board found that the agency had shown by clear and convincing

evidence that it would not have created a GS–12 Senior Nonsupervisory Archivist position and promoted Briley to it absent her protected disclosures. The Board noted that the record demonstrated that if Library management were to create a GS–12 position, that position would likely not be in declassification. As Dr. Geselbracht told Briley, the Library's declassification program was old and small, and he had previously told her that he hoped to reduce it to a half-time position. Given the small (and decreasing) size of the Library's declassification program, we find that substantial evidence supports the Board's determination that even absent Briley's protected disclosures, the Library would not have created a GS–12 position in declassification.

## VII

We note that the prolonged history of this case calls into question the Board's ability to provide prompt justice to both the complaining employee and to the government agency. Briley filed her first appeal with the Merit Systems Protection Board in January of 1995, and the Board's final order was not issued until June of 1999 a period of four and a half years. The costs of such extensive and time-consuming litigation weigh heavily on the complaining employee and the civil service generally. In the future we expect that the Board, the government, and complaining employees will take appropriate steps to avoid such protracted proceedings.

For the foregoing reasons, the Board's decision in this case is affirmed.

## COSTS

No costs.