**David J. MASTON and Elbert F. Mills, Petitioners,**

v.

**DEPARTMENT OF JUSTICE, Respondent.**

No. 00–3352.

United States Court of Appeals, Federal Circuit.

May 30, 2001.

Before NEWMAN, CLEVENGER, and DYK, Circuit Judges.

PER CURIAM.

David J. Maston and Elbert F. Mills ("petitioners") petition for review of the decision of the Merit Systems Protection Board ("Board") denying their request for corrective action based on allegations of protected whistleblowing. This court previously vacated the Board's decision denying petitioners' request for corrective action and remanded to the Board to consider the testimony of two witnesses that the Board had previously excluded as irrelevant. *Maston v. Dep't of Justice,* No. 98–3300, 1999 WL 164922, at *3 (Fed.Cir. Mar.9, 1999) (nonprecedential opinion). The Board thereafter considered the testimony of the two witnesses and denied

corrective action. *Maston v. Dep't of Justice,* Nos. DA–1221–97–0194–M–1, DA–1221–97–0195–M–1 (M.S.P.B. Nov.1, 1999) (Initial Decision). We conclude, after reviewing the Board's decision and the testimony of the witnesses, that petitioners have not demonstrated that the Board erred in denying the request for corrective action, and therefore *affirm.*

## BACKGROUND

The underlying facts of this appeal are set forth in detail in this court's opinion in *Maston v. Dep't of Justice,* No. 98–3300, 1999 WL 164922 (Fed.Cir. Mar.9, 1999) (nonprecedential opinion). We summarize them below.

Petitioners were employed by the United States Immigration and Naturalization Service ("INS" or "agency") in the Occupational Safety and Health ("OSH") Program. Maston served as a GS–13 Health and Safety Manager in California, and Mills served as a GS–12 Health and Safety Specialist in the same state. The OSH program administers various programs related to worker health and safety issues at INS.

Petitioners both voluntarily served on the National Safety and Health Committee ("NSHC") of the INS in 1994 and 1995. The NSHC, which meets on a yearly basis, was formed to "discuss the planning, promotion, maintenance and audit of the Service-wide [OSH] program and advise that corrective action be taken in problem areas which have broad impact." In June 1995, the NSHC issued its annual report which cited concerns about the lack of funding and training, and alleged numerous health and safety violations by INS. The report, which included signatory lines for petitioners Maston and Mills, and the six other members of the NSHC, was addressed to the Designated Agency Safety and Health Official ("DASHO"), a position

occupied by Karen Severn until July 1995 and thereafter by David Yentzer. As discussed later in this opinion, the parties disagree as to whether the DASHO ever received the June 1995 NSHC report.

Patricia Cary worked as a GS–12 Safety and Health Manager in the OSH program, but in the agency's Central Regional Office in Texas. Cary wrote a letter to U.S. Attorney General Janet Reno on August 15, 1995, detailing various problems within the INS and the OSH program. As a result of the letter, Attorney General Reno mandated that INS reorganize its OSH program. INS gave Yentzer the job of reporting on how INS would bring OSH into compliance with numerous federal regulations and executive orders. To that end, Yentzer formed an Occupational Safety and Health Program Work Group ("Work Group") that studied the problems and issued a report in October 1995 that contained recommendations for a more expansive OSH program. The October 1995 report advocated a decentralized organizational structure for the OSH program. The report proposed a number of new positions and their respective grade levels, but did not recommend specific individuals for these positions.

In response to the October 1995 report by the Work Group, Yentzer, on behalf of the agency, began reorganizing the OSH program. However, contrary to the recommendation in the Work Group report, Yentzer chose to implement a centralized structure for the program. Yentzer later testified that he considered several factors which were not addressed by the Work Group in reorganizing the OSH program, and decided to implement a hybrid of the organizational structure which was proposed by the Work Group. Incident to the reorganization, the agency undertook a review of existing position descriptions. Based on a comparison of the revised posi-

tion descriptions with the Office of Personnel Management guidelines, the Office of Classifications proposed downgrading Maston's position to GS–12 and Mills's position to GS–11.[1]

Cary was also adversely affected by the reorganization. After the Work Group issued its report, the agency readvertised Cary's position even though she still occupied it. Robert McCrocklin, who was a member of the NSHC along with Maston and Mills at the time of the June 1995 report, had his position abolished entirely as a result of the reorganization.

Petitioners assert that the agency downgraded their positions in retaliation for the alleged disclosures made in the June 1995 NSHC report. Petitioners sought corrective action from the Office of Special Counsel ("OSC") for the agency's threatened reduction of grade of their respective positions, alleging that it was done out of retaliation for whistleblowing. After the OSC denied their claims, petitioners, as well as Cary and McCrocklin, presented a single appeal to the Board. Maston's and Mills's appeals remained consolidated, but Cary's and McCrocklin's appeals were each heard by different administrative judges, and are not part of this review proceeding.

In Maston's and Mills's first request for corrective action, the administrative judge found that the June 1995 NSHC report included disclosures which would fall under the whistleblowing statute, but that they had not proven that anyone ever received the report and that therefore the report was not a protected disclosure. *Maston v. Dep't of Justice*, Nos. DA–1221–97–0194–W–2, DA–1221–97–0195–W–2 (M.S.P.B. Aug.28, 1997) (Initial Decision). The administrative judge also held that

even if petitioners had shown that they had made a protected disclosure, they had not proven that the June 1995 NSHC report constituted a contributing factor to the agency's actions. As to petitioners' claims relating to the Cary letter, the administrative judge found that petitioners had not shown "any kind of relationship with Ms. Cary" to link their whistleblower status to her activities. The administrative judge also found that even if petitioners had made a protected disclosure that constituted a contributing factor, the agency had demonstrated by clear and convincing evidence that it would have taken the same actions notwithstanding the disclosure. The administrative judge also excluded certain testimony of McCrocklin and Cary as irrelevant. *See Maston*, 1999 WL 164922, at *3. The initial decision became the final decision of the Board. Petitioners then petitioned for review to this court.

This court vacated and remanded, finding that the Board abused its discretion in excluding certain testimony of McCrocklin and Cary as irrelevant. *Maston*, 1999 WL 164922, at *3. We noted that "[t]he testimony of Cary and McCrocklin would clearly have been relevant to establishing a pattern of retaliatory behavior by the agency" and noted that three of the six individuals in the NSHC—Maston, Mills, and McCrocklin—were subject to adverse agency action. *Id.* The court also noted that Cary, the author of the August 1995 letter to the Attorney General, was also subject to adverse agency action. The court therefore held that the Board must determine whether retaliation occurred in light of the relevant evidence, including the testimony of Cary and McCrocklin.

---

1. Mills later accepted a lateral transfer to a new position within the agency and Maston voluntarily retired.

*Id.* Therefore, the court vacated the Board's decision and remanded to the Board. *Id.* at *4.

Pursuant to the administrative judge's orders on remand, petitioners submitted affidavits from McCrocklin and Cary, and the agency submitted rebuttal affidavits from David Yentzer, Karen Severn, and Theresa Singleton. Each of the affiants recounted their version of the events leading up to and after the proposed downgrade. Petitioners waived an oral hearing. In the November 1, 1999, Initial Decision, the administrative judge reviewed and analyzed each of the affidavits. The administrative judge found that the Cary and McCrocklin affidavits "provided no testimony that refutes the agency's position that INS reorganized the OSH program independent of any adverse recommendations in the NSHC report and that the proposed downgrades were dictated by the agency's reorganization of its OSH Program which was mandated by the U.S. Attorney General and was not within the control of the individuals who the appellants have accused of retaliation."

The administrative judge concluded that even the new affidavits did not change his conclusion that the proposed downgrades were not retaliatory acts. The administrative judge then incorporated by reference the August 28, 1997, Initial Decision, and the findings therein, particularly finding that: (1) petitioners had not shown that they made a protected disclosure; (2) that even if petitioners had shown that they made a protected disclosure, they had failed to show that the disclosure was a contributing factor in the agency's decision to downgrade them; (3) and that even if petitioners had shown that the disclosure was a contributing factor, the agency had demonstrated by clear and convincing evidence that it would have taken the same personnel actions—proposing the down-grades at issue—in the absence of petitioners' alleged protected disclosure. Therefore, the administrative judge denied petitioners' request for corrective action. Petitioners' subsequent petition for review to the full Board was denied on May 19, 2000. The timely petition for review to this court followed.

## DISCUSSION

Decisions of the Board must be sustained unless they are arbitrary, capricious, not in accordance with law, obtained without procedures required by rule, law, or regulation having been followed, or unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c) (1994); *Hayes v. Dep't of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir. 1984).

To establish a prima facie case of retaliation for whistleblowing activity, an employee must show both that (1) they engaged in whistleblowing activity by making a disclosure protected under 5 U.S.C. § 2302(b)(8), and (2) that the protected disclosure was a contributing factor in a personnel action. 5 U.S.C. §§ 1221(e)(1), 2302(b)(8); *Briley v. Nat'l Archives & Records Admin.,* 236 F.3d 1373, 1378 (Fed.Cir. 2001). If the employee establishes a prima facie case of retaliation for whistleblowing, corrective action must be ordered unless "the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." 5 U.S.C. § 1221(e)(2); *see also Carr v. Social Sec. Admin.,* 185 F.3d 1318, 1322 (Fed.Cir. 1999).

We agree with petitioners that the Board may have erred in finding that petitioners failed to demonstrate that they made a protected disclosure under 5 U.S.C. § 2302(b). In the August 28, 1997, Initial Decision, the administrative judge held that although "the recommendations

included disclosures of 'substantial and specific danger to public heath and safety' and 'violation of law, rule, or regulation' as contained in 5 U.S.C. § 2302(b)(8)(A)," there was "no evidence that anyone outside the [NSHC] Committee itself received or read the report." The administrative judge held that the June 1995 NSHC report could not be a protected disclosure because none of the parties involved actually received the report. These findings were later incorporated by the administrative judge into the November 1, 1999, Initial Decision.

The record shows that the Work Group may have became aware of the contents of the June 1995 NSHC report during the course of its review, and the administrative judge did not find otherwise. On this record the question of whether a protected disclosure was made is a close one.

The second issue, whether petitioners have shown that the disclosure was a contributing factor in the personnel action taken against them, is also close. However, we do not need to decide the first two issues to resolve this appeal, because we hold that substantial evidence supports the Board's finding on the third issue, *i.e.*, that even if the June 1995 NSHC report was a protected disclosure that was a contributing factor, the agency has demonstrated by clear and convincing evidence that it would have taken the same personnel action—the proposed downgrades—in the absence of the disclosure. *See Briley*, 236 F.3d at 1380 (holding that the Board has jurisdiction if the petitioner makes a non-frivolous allegation that the agency took personnel actions sufficient to confer jurisdiction on the Board); *see also Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371–72 (Fed.Cir.2001). None of the five new affidavits take away from the Board's finding that the OSH reorganization and proposed downgrades would have occurred in the absence of the June 1995 NSHC report. In fact, the new affidavits bolster this finding by the Board.

First, it is clear that Cary's August 1995 letter to Attorney General Reno, rather than the June 1995 NSHC report, initiated INS's review and ultimate reorganization of the OSH program. There is no evidence that the Attorney General was aware of the June 1995 NSHC report when she initiated the review of the INS. Nor is there any evidence that the suggestions of the Attorney General were in any way affected by the June 1995 NSHC report. The Attorney General's response clearly would have occurred with or without the existence of the June 1995 NSHC report.

Moreover, substantial evidence supports the agency's determination that petitioners' positions would have been downgraded even if the June 1995 NSHC report was never disclosed. The new affidavits further support this proposition. Severn, the agency official to whom the June 1995 NSHC report was addressed, stated that she never received the report. Severn, who was also a member of the Work Group that made the initial reorganization recommendation to Yentzer, testified that the report was never brought to her attention until the time of petitioners' appeal. She also noted that there was no record that a copy of the June 1995 report had ever been routed to her office. Similarly, Yentzer, who was appointed in July 1995 as the Designated Agency Safety and Health Official overseeing the OSH group, and was also a member of OSH, testified that while he may have been aware of other NSHC reports, he was not aware of petitioners' participation on the NSHC or the contents of the June 1995 NSHC report until the filing of petitioners' request for corrective action. The administrative judge carefully analyzed Yentzer's testimo-

942

ny as to the reasons for the change in the reorganization scheme and found Yentzer's testimony to be credible and uncontradicted. The administrative judge further found that petitioners presented no evidence to establish that implementation of the original Work Group recommendations would have prevented the downgrading of their positions.

Most importantly, the testimony and affidavit of Theresa Singleton, Acting Chief of the Office of Classifications at INS, clearly shows that the positions would have been downgraded even in the absence of the report. She stated that although McCrocklin had claimed that the Work Group had determined that the positions would have a higher grade level, the Work Group in fact had no authority to change the grade levels of the positions. She stated that only her office, the Office of Classifications, has authority to actually reclassify INS-wide positions, and that when she was given the task of reviewing and classifying the new positions, they graded out at GS–11 and 12, not GS–12 and 13. Additionally, Singleton stated that she discovered upon reclassifying that "Mr. Maston and Mr. Mills positions in the Administrative Center, Laguna (Western Region), were found to be overgraded, and had been for years, based on their duties." In other words, the reason that the positions were downgraded was that they previously had been overgraded, not because of any alleged retaliation for a disclosure. In any reorganization, the positions of Maston and Mills would have been re-examined by the classification division, and downgraded to the proposed grades.

For these reasons, we hold that substantial evidence supports the Board's finding that even if there was a protected disclosure and petitioners' disclosure was a contributing factor, the agency has demonstrated, by clear and convincing evidence, that it would have taken the same personnel actions in the absence of the disclosure. Therefore, we affirm the Board's denial of corrective action.

No costs.