## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

RAZIA SULTANA,
               Appellant,

      v.

DEPARTMENT OF VETERANS
   AFFAIRS,
               Agency.

DOCKET NUMBER
NY-1221-19-0194-W-1

DATE: February 16, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Steve Newman</u>, Esquire, New York, New York, for the appellant.

<u>Heather White</u>, Esquire, Washington, D.C., for the appellant.

<u>Stephen Butera</u>, Esquire, Clarksburg, West Virginia, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**REMAND ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REMAND the case to the field office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2     On August 9, 2015, the agency appointed the appellant to a Physician position in the Nuclear Medicine Section of the Imaging Service at its Martinsburg, West Virginia Veterans Administration Medical Center (VAMC), under the authority of 38 U.S.C. § 7401(1), subject to a 2-year probationary period.  Initial Appeal File (IAF), Tab 11 at 19, 22, 26.  On or about May 22, 2017, the appellant's supervisor, the Imaging Service Chief, recommended to the hospital's credentialing committee that the appellant's clinical privileges not be renewed.  IAF, Tab 8 at 7.  The appellant then filed a whistleblower complaint with the Office of Special Counsel (OSC), alleging that the agency was retaliating against her for disclosures that she made between January 15, 2015, and May 17, 2017, concerning various violations of agency rules and standards of care committed by Nuclear Medicine Technicians.  IAF, Tab 8 at 11-14, Tab 11 at 10.

¶3     On May 31, 2017, the Acting Chief of Staff notified the appellant that the agency was conducting a review of her practice based on errors detected during its ongoing professional practice evaluation.  IAF, Tab 10 at 33-34.  On June 30, 2017, the VAMC Director notified the appellant that the agency had completed its administrative review, and the results "indicated a significant discrepancy rate." *Id*. at 30-31.  He further notified the appellant that her Nuclear Medicine clinical privileges were suspended and she would be placed on administrative duty pending a comprehensive review.  *Id*. at 30-31.  After the process was complete, the Director would decide whether to restore, reduce, or revoke her privileges. *Id*. at 30.

¶4     Subsequently, on July 7, 2017, the Service Chief requested that the Acting Chief of Staff convene a review board to determine whether the appellant should be retained or separated from service.  IAF, Tab 11 at 34.  The appellant was then

notified that a professional standards board had been convened to conduct a summary review of her probationary employment and make recommendations concerning her retention.[2]  *Id*. at 36-37.  Upon completion of the review, the board determined that the appellant had a significant record of clinical errors, and the members voted unanimously to recommend her separation.  *Id.* at 66.  On July 27, 2017, the VAMC Director issued a decision terminating the appellant the following day.  *Id*. at 68.  The appellant amended her pending OSC complaint to include her termination.  IAF, Tab 8 at 19.  On May 31, 2019, OSC closed the appellant's file without taking corrective action.  *Id*. at 9, 19.

¶5       The appellant filed the instant IRA appeal and requested a hearing.  IAF, Tab 1 at 2-4.  The administrative judge issued a standard jurisdictional order for an IRA appeal, notifying the appellant of the jurisdictional standard and directing the parties to file evidence and argument on the issue.  IAF, Tab 3.  After the close of the record, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction.  IAF, Tab 17, Initial Decision (ID).  She found that the appellant's descriptions of her alleged disclosures were vague and conclusory and that she therefore failed to make a nonfrivolous allegation that any of her disclosures were protected.  ID at 4-6.

¶6       The appellant has filed a petition for review disputing the administrative judge's jurisdictional findings.  Petition for Review (PFR) File, Tab 1.  The agency has filed a response.  PFR File, Tab 3.

## ANALYSIS

¶7       As relevant here, the Board has jurisdiction over an IRA appeal if the appellant exhausts her administrative remedies before OSC and makes

---

[2] The appellant appears to dispute her alleged status as a probationary employee.  IAF, Tab 1 at 3, Tab 8 at 8.  Although this matter could possibly be relevant to the merits of the appeal, it is not germane to the issue of jurisdiction.  As an individual appointed under 38 U.S.C. § 7401(1), the appellant would lack Board appeal rights under 5 U.S.C. chapter 75 regardless of her tenure.  *See Hawker v. Department of Veterans Affairs*, 123 M.S.P.R. 62, ¶ 2 n.1 (2015).

nonfrivolous allegations that (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A). *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 6 (2014). In this case, it is undisputed that the appellant exhausted her administrative remedies before OSC. ID at 3; IAF, Tab 1 at 4, Tab 8 at 8-14, 19; *see* 5 U.S.C. § 1214(a)(3)(A). Therefore, the only remaining jurisdictional issue is whether the appellant nonfrivolously alleged that she made a protected disclosure that was a contributing factor in a personnel action.

¶8    Before addressing this issue, however, we must note that our analysis is constrained by the appellant's jurisdictional pleadings. IAF, Tabs 8, 13. The administrative judge gave explicit instructions that were intended to guide the appellant in submitting pertinent information in a useful format. IAF, Tab 3 at 7. The appellant's jurisdictional pleadings are not a model of clarity.[3] Nevertheless, we have given the appellant's pleadings a fair reading.

The appellant has nonfrivolously alleged that she made protected disclosures.

¶9    A protected disclosure is a disclosure which an employee reasonably believes evidences any violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Briley v. National Archives and Records Administration*, 236 F.3d 1373, 1378 (Fed. Cir. 2001); *see* 5 U.S.C. § 2302(b)(8). Having reviewed the appellant's pleadings, we find that she has identified several matters, the disclosure of which could be protected under 5 U.S.C. § 2302(b)(8) as violations of law, rule, or regulation, substantial danger to public health and safety, or both. Specifically, the appellant listed fifteen separate incidents in which agency employees, chiefly Nuclear Medicine Technicians, allegedly violated applicable procedures, laws, or standards of

---

[3] In this regard, we note that the appellant's counsel listed on her petition for review did not represent her below.

medical care. IAF, Tab 8 at 11-13. She alleged that on one occasion, a patient was allowed to view an open patient list. *Id.* at 11. We find that the appellant could reasonably have believed that this violated the Health Insurance Portability and Accountability Act Privacy Rule. *See* 45 C.F.R. § 164.502.

¶10 The appellant also alleged that a patient was subjected to a cardiac stress test despite contraindications for such a test and went into cardiac arrest as a result and that hospital staff later repeated the error with two additional patients. IAF, Tab 8 at 11-13. The Board has previously found that medical errors can represent substantial and specific dangers to public health and safety. *See, e.g., Parikh v. Department of Veterans Affairs,* 116 M.S.P.R. 197, ¶ 15 (2011) (misdiagnoses and placement of patients in inappropriately low levels of care); *Tatsch v. Department of the Army,* 100 M.S.P.R. 460, ¶ 10 (2005) (errors in patient triage). Taking the appellant's allegations as true, especially the life-threatening consequences of the first stress test and the fact that the alleged error was twice repeated thereafter, we find that the appellant could reasonably have perceived a substantial and specific danger to public health and safety.

¶11 The appellant also identified three alleged incidents in which medical testing or the interpretation of test results was unduly delayed. IAF, Tab 8 at 12-13. The Board has found that undue delays in administering medical treatment can constitute a substantial and specific danger to public health and safety. *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 20 (2013); *Parikh*, 116 M.S.P.R. 197, ¶ 15. We find that the appellant in this case could have reasonably believed that the alleged delays at issue constituted such a danger.

¶12 The appellant further identified four instances in which Nuclear Medicine Technicians made clinical decisions on their own without consulting a physician, allegedly in violation of unspecified "standards meant to ensure quality care and patient safety." *Id.* at 11-13. She asserted that clinical determinations are reserved to physicians with clinical privileges and that Nuclear Medicine

Technicians at the Martinsburg VAMC routinely exceeded their authority by making such determinations on their own. IAF, Tab 13 at 5-6. According to the appellant, "the requirement for [agency] employees to have clinical privileges authorizing independent practice is common knowledge to every healthcare practitioner, and the [agency's] standards for privileges are specifically defined in writing." *Id.* at 6. The Board, however, is not privy to the "common knowledge" of agency healthcare practitioners that the appellant cites in lieu of an actual law, rule, or regulation. Nor does there appear to be any information in the record that would help us to decide whether the technicians in these incidents were, in fact, making "clinical determinations" that must be reserved for a physician. Nevertheless, construing the appellant's jurisdictional pleadings in the most favorable light and considering her expertise as a physician for more than 30 years, we find that she made a nonfrivolous allegation that the Nuclear Medicine Technicians violated some rule or regulation by asserting independent clinical judgment.[4] *See Ingram v. Department of the Army*, 114 M.S.P.R. 43, ¶ 10 (2010) (finding that any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction); *Embree v. Department of the Treasury*, 70 M.S.P.R. 79, 85 (1996) (considering the appellant's expertise in finding that she made a nonfrivolous allegation of gross mismanagement); *Van Ee v. Environmental Protection Agency*, 64 M.S.P.R. 693, 698 (1994) (considering the appellant's expertise in finding that she made a nonfrivolous allegation of a gross waste of funds).

¶13      Finally, the appellant identified four incidents in which hospital staff allegedly provided substandard medical care by failing to administer certain tests or scans properly. IAF, Tab 8 at 12. Similar to the allegations discussed above concerning clinical determinations, the appellant asserts that standards of care were violated without identifying the source of the standards. *Id.* Nevertheless,

---

[4] Alternatively, we find that the appellant could reasonably have perceived a substantial and specific danger to public health and safety to the extent that the agency was implementing medical decisions made by unqualified individuals.

the appellant did specify what she believed the shortcomings in these incidents were, and considering her expertise as a physician, we find that she could reasonably have believed that hospital staff were creating a substantial and specific danger to public health and safety by providing substandard medical care. *Id*.

¶14    We disagree with the administrative judge that the appellant's allegations of rule violations and dangers to public health and safety lacked the requisite specificity to constitute nonfrivolous allegations.  ID at 4-6.  The appellant supported her allegations with concrete facts and explained, albeit in general terms, how the hospital staff's actions fell short of standards.  IAF, Tab 8 at 11-14.  This contrasts with other appeals in which the Board has found that allegations of wrongdoing were not sufficiently specific.  For instance, in *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 7 (2016), the appellant submitted his correspondence with another agency official and asserted that the other official "demonstrated a disregard for compliance issues," but he did not explain how compliance protocol were being violated, nor was any such noncompliance apparent on its face.  Likewise, in *Boechler v. Department of the Interior*, 109 M.S.P.R. 542, ¶ 12 (2008), *aff'd*, 328 F. App'x. 660 (Fed. Cir. 2009), the appellant alleged that he raised "serious concerns about matters of public safety" regarding the agency's termination of a contract, but it was unclear how public safety was implicated by these events, and the appellant did not explain.  We also disagree with the administrative judge's finding that the appellant described actions by hospital staff upon which reasonable people could disagree.  ID at 6.  Disclosures concerning reasonably debatable differences about agency policy are not protected under the Whistleblower Protection Act.  *White v. Department of the Air Force*, 95 M.S.P.R. 1, ¶ 37 (2003), *aff'd*, 391 F.3d 1377 (Fed. Cir. 2004).  However, we find that violations of hospital safety protocol and the provision of substandard medical care do not fall into that category.

¶15     Nevertheless, to establish jurisdiction over an IRA appeal, it is not enough for an appellant to allege instances of danger or wrongdoing. Rather, the focus of the analysis is on the appellant's *disclosure* of such danger or wrongdoing. *See Linder*, 122 M.S.P.R. 14, ¶ 6. In this case, it appears that the appellant is alleging five protected disclosures. Regarding the first disclosure, the appellant alleged that she "brought her concerns" to the Service Chief on an unspecified date (but apparently prior to January 2017). IAF, Tab 8 at 13. Regarding the second disclosure, the appellant alleged that, in January 2017, she "escalated her concerns" to the Martinsburg VAMC Chief of Staff. *Id.* Regarding the third, fourth, and fifth disclosures, the appellant alleged that she elevated her "concerns" to the "VAMC's Director" on April 11, 2017, and sent additional and clarifying information to him on April 25 and May 17, 2017. IAF, Tab 3 at 13, Tab 13 at 4-5. We infer that these "concerns" consisted of some or all of the fifteen incidents that the appellant described.[5] As explained above, the appellant made nonfrivolous allegations that she reasonably believed that these incidents entailed violations of law, rule, or regulation, or substantial and specific dangers to public health and safety. *Supra* ¶¶ 9-13. We therefore find that the appellant has nonfrivolously alleged that these disclosures were protected.

The appellant made a nonfrivolous allegation that her disclosures were a contributing factor in two personnel actions.

¶16     The term "personnel action" is defined at 5 U.S.C. § 2302(a)(2)(A). It covers various agency actions, including terminations and significant changes in duties, responsibilities, and working conditions. 5 U.S.C. § 2302(a)(2)(A)(iii), (xii). The appellant in this case has not clearly described the personnel actions that she is alleging in this appeal. In her prehearing submission, she states, "The actions the VAMC took against appellant are as follows," and proceeds with a

---

[5] The appellant's first disclosure may have been oral, but it appears that the other four disclosures were in writing and that the appellant submitted copies of these disclosures to OSC. IAF, Tab 8 at 13 & n.6. Inexplicably, the appellant has neglected to file this same crucial evidence with the Board.

confusing narrative account of events between April and June 2017. IAF, Tab 13 at 6-9. The appellant then asserts that the issue in the appeal is whether her termination was in retaliation for protected whistleblowing. *Id.* at 9. Our best interpretation of the appellant's pleading is that she is alleging two personnel actions: (1) a significant change in duties, responsibilities, and working conditions associated with the suspension of her clinical privileges and the proceedings attendant thereto, and (2) her July 28, 2017 termination.

¶17    Regarding the appellant's first disclosure, it would appear that she made this disclosure to the Service Chief in late 2016. IAF, Tab 8 at 13. According to the appellant, on May 22, 2017, the Service Chief recommended to the hospital's credentialing committee that the appellant's clinical privileges not be renewed. IAF, Tab 8 at 7. In addition, the record shows that, on July 7, 2017, the Service Chief requested that the agency convene the review board that ultimately recommended the appellant's termination. IAF, Tab 11 at 34. It therefore appears that the Service Chief influenced both of the personnel actions at issue. *See Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 11 (2012) (finding that an appellant can establish contributing factor by showing that an individual with actual knowledge of her disclosure influenced the official accused of taking the retaliatory action). The time between late 2016 and July 2017 is such that contributing factor can be inferred via the knowledge/timing test of 5 U.S.C. § 1221(e)(1). *See Smith v. Department of Agriculture*, 64 M.S.P.R. 46, 65 (1994) (finding that personnel actions taken within 1 year of the protected disclosures satisfied the knowledge/timing test). We therefore find that the appellant has made a nonfrivolous allegation that this disclosure was a contributing factor in both of the claimed personnel actions.

¶18    The appellant's second disclosure was allegedly made to the "VAMC's Chief of Staff" in January 2017.[6]    IAF, Tab 8 at 13. The record below shows that

---

[6] In her prehearing submission, the appellant stated that her whistleblower disclosures were made to the Service Chief and the Director, without mentioning her disclosure to the Chief of Staff. IAF, Tab 13 at 5. However, it is not clear to us that the appellant's

there were multiple Acting Chiefs of Staff during 2017, but the appellant did not give the name of the individual to whom she made her disclosure. IAF, Tab 10 at 33, Tab 11 at 34. For the first time on petition for review, the appellant identifies this individual by name as someone other than the two Acting Chiefs of Staff who the record shows may have had something to do with the personnel actions. PFR File, Tab 1 at 9; IAF, Tab 10 at 33, Tab 11 at 34, 39, 44. It would appear that the Chief of Staff to whom the appellant made her disclosure left shortly after receiving the disclosure and was replaced by a succession of Acting Chiefs of Staff who encumbered the position at the time of the personnel actions. We see nothing in the record to suggest that the Chief of Staff to whom the appellant made her disclosure had anything to do with the personnel actions. Nevertheless, the appellant alleges that the Service Chief was aware of her disclosure to the Chief of Staff and consequently recommended her employment be reviewed for "failing to recognize the chain of command." PFR File, Tab 1 at 10; IAF, Tab 11 at 34. Because it appears that the Service Chief influenced both personnel actions, we find that the appellant made a nonfrivolous allegation that her second disclosure was a contributing factor as well.

¶19 The appellant alleged below that she made her third, fourth, and fifth disclosures to the "VAMC's Director," Mr. W., in April and May 2017. IAF, Tab 8 at 4-5, 13, Tab 13 at 4-5. In reviewing documentary evidence, however, we observed that a different individual, Dr. C., was Director of the Martinsburg VAMC during this time period, and there was no documentary evidence bearing Mr. W's name anywhere else in the record. IAF, Tab 10 at 30-31, Tab 11 at 68-69. The appellant has clarified this matter on petition for review, where she identifies Mr. W. as Director of the Capitol Veterans Integrated Service Network (VISN 5). PFR File, Tab 1 at 9. It therefore appears that the appellant made her third, fourth, and fifth disclosures to the VISN 5 Director, Mr. W., and not to the Martinsburg VAMC Director, Dr. C. The appellant does not allege, and there is

omission was intentional, so we have considered this alleged disclosure as well.

nothing in the record to suggest, that the VISN 5 Director had anything to do with the personnel actions at issue. Nevertheless, as with the disclosure to the Chief of Staff, the appellant alleges that the Service Chief was aware of her disclosures to the VISN 5 Director, as evidenced by her remarks regarding the appellant's failure to recognize the chain of command. PFR File, Tab 1 at 10; IAF, Tab 11 at 30. We therefore find that the appellant has made a nonfrivolous allegation that her third, fourth, and fifth disclosures were contributing factors in the personnel actions.

¶20 Because the appellant exhausted her administrative remedies with OSC and has nonfrivolously alleged that her disclosures were protected and were contributing factors in two personnel actions, we find that she has established jurisdiction over her appeal. *See Lane v. Department of Homeland Security*, 115 M.S.P.R. 342, ¶ 35 (2010). We therefore remand the appeal for adjudication of the merits, including the appellant's requested hearing. IAF, Tab 1 at 2.

## ORDER

¶21 For the reasons discussed above, we remand this case to the New York Field Office for further adjudication in accordance with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD: _____
Gina K. Grippando
Clerk of the Board

Washington, D.C.