UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

DAVID J. MCCAULEY,
                    Appellant,

            v.

DEPARTMENT OF VETERANS
    AFFAIRS,
                    Agency.

DOCKET NUMBER
CH-1221-14-0721-W-1

DATE: February 18, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

David J. McCauley, Coral Springs, Florida, pro se.

Kimberly Negley, Esquire, St. Louis, Missouri, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which denied his request for corrective action.[2]  After fully considering the filings in

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

[2]  A substantial portion of the appellant's petition for review is devoted to a discussion of his separate appeal alleging that he was not selected for a Medical Support Assistant position in violation of the Veterans Employment Opportunities Act of 1998 (VEOA).

this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We dismiss the appeal in part for lack of jurisdiction and, regarding the parts of the appeal over which we have jurisdiction, we deny the appellant's request for corrective action.

## BACKGROUND

¶2 The agency hired the appellant as a GS-5 Clerk in the Beneficiary Travel Office (BTO) in the Jefferson Barracks Division of the St. Louis Veterans Affairs Medical Center (VAMC) in St. Louis, Missouri. Initial Appeal File (IAF), Tab 9. The BTO reimburses veterans for travel costs incurred in coming to the VAMC for service. *Id*. While the appellant was at the Jefferson Barracks, he wrote a letter to the head of the agency alleging that the agency had not replaced a BTO Clerk who had left the agency, and identifying ways that the BTO could operate more efficiently. IAF, Tab 4, Exhibit (Ex.) 1. The appellant also provided veterans coming to the BTO who were complaining about long wait times with business-size envelopes addressed to the head of the agency so that they could directly communicate their concerns about the wait times. IAF, Tab 1. Shortly thereafter, the agency transferred the appellant to the BTO in the John Cochran Division (Cochran) of the VAMC. *Id*.

¶3 In December 2012, the appellant voluntarily transferred from the position at Cochran to a Medical Support Assistant (MSA) position in Bay Pines, Florida, to help his brother who was recovering from a serious motor cycle accident. By the

The Board recently issued a decision on the appellant's petition for review of the initial decision in that case. In a nonprecedential order, the Board remanded the case to the regional office for issuance of a jurisdictional notice, and, if the administrative judge finds that the Board has jurisdiction, development of the record to determine whether, through the agency's reconstructed selection process, the appellant obtained all of the relief he could have obtained had he prevailed on his VEOA claim before the Board. *McCauley v. Department of Veterans Affairs*, MSPB Docket No. CH-3443-14-0099-I-3, Final Order (July 8, 2015).

appellant's admission, he transferred without assurance from the VAMC that he could later return. *Id*. Sometime in 2013, the appellant attempted to return to the VAMC, and was told that applying for vacant positions was the only way he could return. IAF, Tab 9. The appellant applied for two vacancies, an MSA position and a Gardener position, and he was not selected for either one.

¶4  The appellant filed an individual right of action (IRA) appeal alleging that the agency transferred him to Cochran, failed to noncompetitively transfer him back to the VAMC from Florida, and failed to select him for the MSA and Gardener positions in violation of the Whistleblower Protection Act (WPA). He asserted that the agency's actions constituted retaliation for the following actions: (1) sending his letter to the head of the agency; (2) providing veterans who were complaining about long wait times with envelopes addressed to the head of the agency so that they could directly communicate their concerns; (3) reporting that his supervisor closed the BTO 15 minutes early; and (4) notifying the head of the agency that he needed police protection when he closed the BTO because a veteran had become violent when he was refused travel reimbursement. IAF, Tabs 1, 8.

¶5  The appellant did not request a hearing. IAF, Tab 1. Based on the written submissions of the parties, the administrative judge found the appellant showed that he had exhausted administrative procedures before the Office of Special Counsel (OSC). IAF, Tab 28, Initial Decision (ID) at 4-5. She also found that the appellant could not have reasonably believed that the failure of the agency to timely replace a BTO Clerk at the Jefferson Barracks was gross mismanagement. However, she found that, because he made it known to high-level managers that he had complained to the head of the agency, he established that he was perceived as a whistleblower, and, as such, his letter to the head of the agency constituted a protected disclosure under 5 U.S.C. § 2302(b)(8). ID at 7-9. Additionally, she found that the appellant's providing envelopes to assist veterans with informing the head of the agency of their frustrations with long wait times was a protected

activity under 5 U.S.C. § 2302(b)(9)(B) of the Whistleblower Protection Enhancement Act (WPEA), a provision that defines a protected activity as lawfully assisting any individual in the exercise of any appeal right granted by any law, rule, or regulation.  ID at 7-9.

¶6        The administrative judge further found that transfers and nonselections are personnel actions, and that, under the knowledge/timing test, the appellant established that his disclosures were a contributing factor to his transfer.  ID at 9-11.  However, she found that, because the appellant failed to show that the agency officials who denied the appellant's transfer from Florida to St. Louis and did not select him for the MSA and Gardener positions were aware of his disclosures, he failed to show that his disclosures were a contributing factor in those personnel actions.  ID at 11-13.  Finally, the administrative judge found that the agency established by clear and convincing evidence that it would have reassigned the appellant absent the perception of him as a whistleblower because his reassignment was voluntary.  ID at 14-17.

## ANALYSIS

¶7        Before addressing the merits of an IRA appeal, the Board first must determine whether all its jurisdictional requirements have been met. *Schmittling v. Department of the Army*, 219 F.3d 1332, 1337 (Fed. Cir. 2000). Moreover, the issue of Board jurisdiction is always before the Board and may be raised at any time.  *Ney v. Department of Commerce*, 115 M.S.P.R. 204, ¶ 7 (2010).[3]  Thus, notwithstanding the administrative judge's reaching the merits of the appeal, we find we must make a jurisdictional determination regarding the appellant's IRA appeal.  Further, the agency filed a motion to dismiss the appeal

---

[3] Attached to the appellant's petition for review are a number of documents, most of which are already in the record, and those that are not were available before the close of the record.  We have not considered these documents except as they relate to the issue of Board jurisdiction.  *See Meier v. Department of the Interior*, 3 M.S.P.R. 247, 256 (1980); *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980).

for lack of jurisdiction. IAF, Tab 7. The administrative judge did not rule on the motion, and made no jurisdictional findings.

¶8 Generally, to establish jurisdiction over an IRA appeal regarding activity protected under 5 U.S.C. § 2302(b)(8), an appellant must prove that he exhausted his administrative remedies before OSC and make nonfrivolous allegations that: (1) he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8); and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, ¶ 12 (2002).[4]

The appellant exhausted his administrative remedies regarding only some of his disclosures.

¶9 Under 5 U.S.C. § 1214(a)(3), an employee is required to "seek corrective action from [OSC] before seeking corrective action from the Board" through an IRA appeal. To satisfy this requirement, an appellant must articulate to OSC the basis for his request for corrective action "with reasonable clarity and precision." *Ellison v. Merit Systems Protection Board*, 7 F.3d 1031, 1037 (Fed. Cir. 1993); *see Ward v. Merit Systems Protection Board*, 981 F.2d 521, 526 (Fed. Cir. 1992). Although an appellant may add further detail to his claims before the Board, *see Briley v. National Archives & Records Administration*, 236 F.3d 1373, 1378 (Fed. Cir. 2001), he first must make a reasonably clear and precise claim with OSC, *see, e.g.*, *Mintzmyer v. Department of the Interior*, 84 F.3d 419, 422 (Fed. Cir. 1996).

¶10 As noted, the appellant's alleged protected disclosures are writing a letter to the head of the agency, providing veterans who were complaining about long wait

---

[4] The administrative judge's show cause order set forth the necessary jurisdictional elements of an IRA appeal under the WPA and the WPEA, including the elements required to establish that the appellant was perceived as a whistleblower. IAF, Tab 3.

times with envelopes addressed to the head of the agency so that they could directly communicate their concerns, reporting that his supervisor closed the BTO 15 minutes early, and notifying the head of the agency that he needed police protection when he closed the BTO because a veteran had become violent when he was refused travel reimbursement.

¶11    The appellant submitted a copy of the complaint that he filed with OSC and a copy of OSC's letter notifying him that he may seek corrective action from the Board.  IAF, Tabs 1, 4 at 11.[5]  In his complaint, he states that, in the fall of 2012, he directed veterans to complain to the head of the agency regarding issues that impacted their travel pay reimbursement.  IAF, Tab 4 at 15-16.  He also states that he had alerted the head of the agency about his transfer and nonselections.  *Id*. at 16.  OSC's letter to the appellant identifies his alleged protected activity as sending a letter to the head of the agency concerning reimbursement policies and lack of staffing of the BTO, and directing veterans to complain to the head of the agency about travel pay reimbursement issues.  IAF, Tab 1.

¶12    The appellant's submissions to OSC mention neither reporting that his supervisor closed the BTO 15 minutes early, nor notifying the head of the agency that he needed police protection when he closed the BTO because a veteran had become violent.  Thus, we find that the appellant exhausted his administrative remedies before OSC only regarding writing a letter to the head of the agency and suggesting to veterans that they complain to the head of the agency about long wait times in the BTO.

---

[5] The administrative judge mistakenly stated in the initial decision that the appellant did not submit a copy of his OSC complaint.  ID at 5 n.3.  The administrative judge's error is of no legal consequence, however, because it did not adversely affect the appellant's substantive rights.  *See Karapinka v. Department of Energy*, 6 M.S.P.R. 124, 127 (1981).

<u>The appellant failed to make a nonfrivolous allegation that writing his letter to the agency head was a protected activity.</u>

¶13      We first address whether the appellant made a nonfrivolous allegation that his letter to the head of the agency is a disclosure protected by section 2302(b)(8).  A protected disclosure is a disclosure of information that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  *Schoenig v. Department of Justice*, 120 M.S.P.R. 318, ¶ 8 (2013) (citing 5 U.S.C. § 2302(b)(8)).  At the jurisdictional stage, the appellant only is burdened with making a nonfrivolous allegation that he reasonably believed that his disclosure evidenced a violation of one of the circumstances described in 5 U.S.C. § 2302(b)(8).  *Id*.  The proper test for determining whether an employee had a reasonable belief that his disclosure was protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced a violation of one of the other conditions set forth in 5 U.S.C. § 2302(b)(8).  *Id*.

¶14      In his September 24, 2012 letter to the head of the agency, the appellant notes that generally the BTO is staffed with two clerks, that one of the clerks had recently resigned, and states that, as the only clerk in the office, he cannot get time off to visit his brother in Florida who was seriously hurt in a motorcycle accident.  IAF, Tab 7, Ex. 1.  He also states that veterans are experiencing long wait times in the BTO and have expressed their concerns about the lack of staffing in that office.  *Id*.  He further identifies ways that he believes that the BTO could change to operate with one clerk.  *Id*.  Neither the appellant's letter to the head of the agency nor his complaint filed with OSC identifies any category of disclosure found in section 2302(b)(8).  *Id*.; IAF, Tab 4.  In his response to the administrative judge's jurisdictional order, the appellant, for the first time, uses

the phrase "gross mismanagement" by his manager at the VAMC to characterize his disclosure. IAF, Tab 4 at 5.

¶15 The Board has held, however, that it will not require, as a basis for its jurisdiction, that an appellant in an IRA appeal correctly label, in a whistleblower reprisal complaint to OSC, a category of wrongdoing under 5 U.S.C. § 2302(b)(8) that might be implicated by a particular set of factual allegations. *Pulcini v. Social Security Administration*, 83 M.S.P.R. 685, ¶ 8 (1999), *aff'd*, 250 F.3d 758 (Fed. Cir. 2000). Thus, we must examine the appellant's allegations to determine the appropriate whistleblower category. *See id.* For the reasons discussed below, we find that the applicable (b)(8) categories are "abuse of authority" and "gross mismanagement."

¶16 The Board has defined abuse of authority as "an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons." *Id.*, ¶ 9. The Board has stated that there is no de minimis standard for abuse of authority. *Id.*

¶17 Gross mismanagement means a management action or inaction that creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission. *Embree v. Department of the Treasury*, 70 M.S.P.R. 79, 85 (1996). It requires "more than de minimis wrongdoing or negligence," and "does not include management decisions which are merely debatable," nor does it "mean action or inaction which constitutes simple negligence or wrongdoing." *Id.* "There must be an element of blatancy." *Id.* Thus, the appellant has a higher burden of proof because of the standard applied to allegations of gross mismanagement. *See id.*; *see also Smith v. Department of the Army*, 80 M.S.P.R. 311, ¶ 8 (1998).

¶18 The letter that the appellant wrote to the head of the agency is dated September 24, 2012. IAF, Tab 7, Ex. 1. In the letter, the appellant's disclosure is that, as of the date of the letter, the agency had not hired a replacement for an

employee who resigned earlier from his position in the BTO and that this caused long lines of veterans seeking travel reimbursement. Although the appellant does not give the exact date that this employee left the BTO, he indicates that the employee gave his 30-days' notice sometime after June 22, 2012. *Id*. Thus, the longest time interval that the BTO operated with one clerk by the date of the appellant's letter would have been from July 23 to August 24, 2012, an interval of only 2 months. We find that failure to fill a position for 2 months is not in and of itself an arbitrary and capricious exercise of authority, and the appellant has alleged no additional facts that, if proven, would show that the failure was arbitrary and capricious. *See Pulcini*, 83 M.S.P.R. 685, ¶ 8. Consequently, we find that the appellant's disclosure fails to rise to a nonfrivolous allegation of an abuse of authority. Additionally, we find that a failure to fill a vacancy for 2 months is merely a debatable management decision, or at most inaction that constitutes simple negligence. *See Embree*, 70 M.S.P.R. at 85. Therefore, we likewise find that the appellant's disclosure fails to rise to the level of a nonfrivolous allegation of gross mismanagement.

The appellant failed to make a nonfrivolous allegation that he was perceived as a whistleblower.

¶19    Because the appellant's letter was known to his managers, including the Associate Director of the VAMC, we also have considered whether the appellant made a nonfrivolous allegation that he was perceived as a whistleblower. One who is perceived as a whistleblower is entitled to the protection of the WPA, even if he has not made protected disclosures. *Juffer v. U.S. Information Agency*, 80 M.S.P.R. 81, ¶ 12 (1998).

¶20    The Board has found that a variety of fact patterns can support a finding that an individual was perceived as a whistleblower. In *Mausser v. Department of the Army*, 63 M.S.P.R. 41, 44 (1994), the appellant compiled a list of "waste, fraud, and abuse," "safety issues," and violations of "government regulations" that he observed at the agency, with the intention of disclosing the list to the

Inspector General after he completed his probationary period. Although the appellant never actually disclosed the list and was therefore not a whistleblower when the agency terminated him, the Board found that the agency may have perceived him as a whistleblower to the extent that the agency knew about the list and his intention to disclose it. *Mausser*, 63 M.S.P.R. at 44. In *Thompson v. Farm Credit Administration*, 51 M.S.P.R. 569, 581 (1991), the appellant disagreed with the agency Chairman's public position on the agency's financial condition, and he expressed his disagreement to various agency officials, including the Chairman himself. Although the appellant did not actually disclose his disagreement or the bases thereof to anyone outside the agency, and although he did not intend for the expression of his disagreement to constitute a whistleblowing disclosure, the Chairman still perceived the appellant as a whistleblower because he believed the appellant to be "a dangerous proponent of a view that could prove embarrassing—possibly evidencing mismanagement and abuse of discretion." *Id.* In *Holloway v. Department of the Interior*, 82 M.S.P.R. 435, ¶ 15 (1999), a local newspaper reported that the appellant had disclosed "fraud, waste and abuse" at his employing agency but did not discuss the particulars of the disclosures. The appellant alleged that his supervisor was aware of the newspaper article and took personnel actions against him because of it. *Id.* Therefore, the Board found in that case that even absent a showing that the appellant made any protected disclosures, he made a nonfrivolous allegation that his supervisor perceived him as a whistleblower because the supervisor was aware of the newspaper article labeling him as such. *Id.*

¶21 Although the cases discussed above arose from widely different factual circumstances, they share a common element, i.e., that agency officials appeared to believe that the appellants engaged or intended to engage in whistleblowing activity. Thus, the analysis of whether an appellant was actually a whistleblower is different from the analysis of whether an appellant was perceived as a whistleblower. In cases falling under the former category, the Board will focus

its analysis on the appellant's perceptions and the disclosures themselves, i.e., whether he reasonably believed that his disclosures evidenced the type of wrongdoing listed under 5 U.S.C. § 2302(b)(8). *See, e.g.*, *Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶¶ 15-18, 22-23 (2011); *Rzucidlo v. Department of the Army*, 101 M.S.P.R. 616, ¶¶ 17-18 (2006). In cases falling under the latter category, the Board will focus its analysis on the agency's perceptions, i.e., whether the agency officials involved in the personnel actions at issue believed that the appellant made or intended to make disclosures that evidenced the type of wrongdoing listed under 5 U.S.C. § 2302(b)(8). *See, e.g.*, *Mausser*, 63 M.S.P.R. at 44; *Thompson*, 51 M.S.P.R. at 581-82. In those cases, the issue of whether the appellant actually made protected disclosures is immaterial; the issue of whether the agency perceived the appellant as a whistleblower will essentially stand in for that portion of the Board's analysis in both the jurisdictional and merits stages of the appeal.

¶22 Therefore, to establish jurisdiction over an IRA appeal alleging that the agency retaliated against an appellant based on its perception that he was a whistleblower, he must show that he exhausted his remedies before OSC, and make a nonfrivolous allegation that the agency perceived him as a whistleblower, and that the agency's perception was a contributing factor in its decision to take or not take the personnel action at issue. *King v. Department of Army*, 116 M.S.P.R. 689, ¶ 6 (2011).

¶23 Here, the appellant stated in his OSC complaint that he was "called on the carpet" by the VAMC Assistant Director after he wrote the letter to the head of the agency. IAF, Tab 4 at 15. Under the circumstances where this allegedly being "called on the carpet" occurred before any alleged retaliatory action, we find that the appellant's OSC complaint contained an allegation that he was perceived as a whistleblower, and thus he exhausted his administrative remedies as to this allegation.

¶24     However, as noted above, the appellant's letter fails to characterize the situation as falling under any of the (b)(8) categories. Thus, the circumstances here are unlike those in *Mausser*, 63 M.S.P.R. at 44, where the employee headed his list with a (b)(8) category "safety." Further, the appellant failed to allege that the VAMC Assistant Director identified that the appellant's letter related to any (b)(8) category. In fact, contrary to the assertion in the appellant's OSC complaint that he was "called on the carpet," he stated in his first response to the agency's motion to dismiss for lack of jurisdiction that the Assistant Director "did indicate that I was not in trouble for the letter."[6] IAF, Tab 4 at 6. Therefore, the circumstances here are unlike those in *Thompson*, 51 M.S.P.R. at 584, where an agency official identified the employee's disagreement with agency action as possibly implicating a (b)(8) category. Additionally, there is no outside reference to the appellant that characterized the situations mentioned in his letter to the head of the agency as any (b)(8) category. So, the circumstances here are unlike the situation in *Holloway*, 82 M.S.P.R. 433, ¶ 5, where a newspaper reported that the employee disclosed a (b)(8) category.

¶25     Thus, we find that the appellant failed to make a nonfrivolous allegation that any agency officials involved believed that the appellant made or intended to make disclosures that evidenced the type of wrongdoing listed under 5 U.S.C. § 2302(b)(8). *See, e.g.*, *Mausser*, 63 M.S.P.R. at 44; *Thompson*, 51 M.S.P.R. at 581–82.

---

[6] The administrative judge mistakenly refers to the appellant's statements in his submissions as unsworn. *See, e.g.*, ID at 16. The appellant's submissions were e-filed. With each document that is e-filed, the question is asked "Do you declare, under penalty of perjury, that the facts stated in this pleading are true and correct." IAF, Tab 3, Tab 8 at 3. Thus, all of the statements that the appellant made asserting facts that he knew from his personal knowledge and that he e-filed are sworn statements. We find that the administrative judge's error does not affect the outcome of this case. In any event, we have considered the statements as sworn in making our decision.

The appellant made a nonfrivolous allegation that the agency retaliated against him for activity protected under the WPEA.

¶26    Section 101(b)(1)(A) of the WPEA amended 5 U.S.C. § 1221(a) to provide that an employee, former employee, or applicant for employment may seek corrective action from the Board regarding any personnel action taken, or proposed to be taken, against such employee, former employee, or applicant for employment, as a result of a prohibited personnel practice described in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  *See Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629, ¶ 9 (2014) (discussing the scope of the WPEA amendments to title 5).  Thus, to establish jurisdiction over an IRA appeal regarding activity protected under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), an appellant must prove that he exhausted his administrative remedies before OSC and make nonfrivolous allegations that:  (1) he engaged in activity protected by 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).

¶27    Here, as noted, the appellant exhausted his administrative remedies regarding his assertion that the agency retaliated against him for suggesting to veterans that they complain to the head of the agency about long wait times in the BTO.  Further, as explained below, we find that the appellant made a nonfrivolous allegation that his distribution of envelopes addressed to the head of the agency was activity protected by section 2302(b)(9)(B) and that his protected activity was a contributing factor to the agency's failure to noncompetitively transfer him back to the VAMC from Florida, and failure to select him for the MSA and Gardener positions.

¶28    Section 2302(b)(9)(B) makes it unlawful for an individual to take, fail to take, or threaten to take a personnel action because of the employee "testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in [5 U.S.C. § 2302(b)(8)(A)](i) or (ii)."  5 U.S.C. § 2302(b)(9)(B).

Section 2302(b)(9)(B) also bars reprisal for assisting another individual in the exercise of any appeal, complaint, or grievance right granted by law, rule, or regulation, and such a proceeding need not concern remedying a violation of whistleblower reprisal under section 2302(b)(8). *See Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 6 n.3 (2014). For example, performing union-related duties, such as filing grievances and representing other employees in the grievance process, are protected activities under section 2302(b)(9). *See Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 10 (2015). Also, under the WPEA, the Board has jurisdiction over claims of retaliation for lawfully assisting a coworker in a grievance proceeding granted by law, rule, or regulation, even outside of the context of union-related duties.

¶29 Title 38 of the Code of Federal Regulations, section 17.33(g) provides for patient grievances. Specifically, it provides that:

> [e]ach patient has the right to present grievances with respect to perceived infringement of the rights described in this section or concerning any other matter on behalf of himself, herself or others, to staff members at the facility in which the patient is receiving care, other Department of Veterans Affairs officials, government officials, members of Congress or any other person without fear or reprisal.

38 C.F.R. § 17.33(g). The appellant gave the envelopes to the veterans experiencing long wait times in the BTO so that they could express their frustration to the head of the agency, consistent with the grievance rights provided in section 17.33(g). Therefore, we find that he made a nonfrivolous allegation that he was assisting patients with a grievance right granted by law, rule, or regulation.

¶30 The WPEA was signed into law on November 27, 2012, and it had an effective date of December 27, 2012. *King v. Department of the Air Force*, 119 M.S.P.R. 663, ¶ 3 (2013). The appellant's alleged protected disclosure and alleged protected activity occurred prior to the effective date of the WPEA. Further, his transfer to Cochran occurred on December 6, 2012, prior to

the effective date of the WPEA, and the Board does not have jurisdiction to determine whether the transfer constituted retaliation for activity protected under the WPEA. However, the agency's failure to noncompetitively transfer the appellant back to the VAMC from Florida, and failure to select him for the MSA and Gardener positions occurred in 2013, after the effective date of the WPEA and the Board has jurisdiction to determine whether these actions constituted retaliation for activity protected by the WPEA.

¶31     Each of the agency actions taken regarding the appellant after the effective date of the WPEA are personnel actions within the meaning of the WPEA. *See* 5 U.S.C. § 2302(a)(2)(A). Additionally, the appellant made a nonfrivolous allegation that his protected activity was a contributing factor in the personnel actions. One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the protected activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the protected activity, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *See Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 26 (2011). In his response to the administrative judge's Order on Jurisdiction, the appellant stated that he believed that the official responsible for each of these personnel actions took the action in reprisal for the appellant's protected activity. IAF, Tab 4 at 4. The appellant's protected activity occurred in September 2012, and the agency took the personnel actions at issue here within a year of the protected activity. The Board has held that personnel actions that were alleged to have begun within 1 year of the disclosures satisfy the "timing" component of the knowledge/timing test. *See Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 10 (2013).

The appellant failed to prove by preponderant evidence that his protected activity was a contributing factor to the agency's failure to noncompetitively transfer him back from Florida and to his nonselections for the MSA and Gardener positions.

¶32    Although we find that the appellant has made a nonfrivolous allegation of retaliation for protected activity establishing jurisdiction over his IRA appeal under the WPEA, he has failed to establish a prima facie case.  Only if the appellant makes out a prima facie case of reprisal for protected activity must the agency be given an opportunity to prove, by clear and convincing evidence, the affirmative defense that it would have taken the same personnel action in the absence of the protected activity.  *See* 5 U.S.C. § 1221(e)(2); *Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 18 (2010).  To establish a prima facie case under the WPEA, the appellant must prove, by preponderant evidence, that he engaged in protected activity and that the activity was a contributing factor in a personnel action against him.  *See* 5 U.S.C. § 1221(e)(1); *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 12 (2011).

¶33    The agency does not dispute that the appellant distributed envelopes addressed to the head of the agency to veterans, directing them to complain to the head of the agency about travel pay reimbursement issues.  Therefore, we find that the appellant established by preponderant evidence that he engaged in protected activity.  However, the appellant failed to prove by preponderant evidence that his protected activity was a contributing factor in the personnel actions taken against him.  The agency submitted affidavits from the officials that the appellant alleges retaliated against him by disallowing his transfer back to the VAMC from Florida and who did not select him for the MSA and Gardener positions.  IAF, Tab 9 at 5-13.  Each official stated that he had no knowledge of the appellant's protected activity when he took the personnel action involving the appellant.  The appellant did not rebut these affidavits, and thus, we find that he failed to establish by preponderant evidence the knowledge prong of the knowledge/timing test regarding the agency's failure to transfer/reassign him

back to the VAMC from Florida, and the agency's failure to select him for the MSA and Gardener positions.

¶34 The official involved in the agency's decision not to transfer the appellant from Florida averred that he first heard of the appellant when he called in 2013 requesting a reassignment/transfer to the VAMC from the Florida VAMC. *Id.* at 6. The official stated further that, at that time, he had not heard about any of the appellant's protected activity. *Id.* He stated that he informed the appellant that the VAMC did not have an active reassignment/transfer program, and encouraged the appellant to apply for vacancies at the VAMC. *Id.* He stated that the decision not to transfer/reassign the appellant back to the VAMC had nothing to do with his protected activity. *Id.* Rather, the official stated that it had been a longstanding practice of the VAMC not to transfer/reassign employees back to the VAMC and it had declined to do so in other cases as well. *Id.*

¶35 The official who did not select the appellant for the MSA position stated in an affidavit that he had no knowledge of the appellant's protected activity when he made the selection for the MSA position. *Id.* at 10. Similarly, the official who did not select the appellant for the Gardener position stated in an affidavit that he received no information about the appellant other than his application and résumé, which did not include anything about the appellant's protected activity. *Id.* at 13.

¶36 Based on our review of the evidence, we conclude that, although the appellant exhausted his remedies with OSC regarding his disclosure in a letter to the head of the agency that the BTO failed to fill a clerk vacancy, he failed to make a nonfrivolous allegation that his disclosure was protected under the WPA. We also conclude that the appellant failed to make a nonfrivolous allegation that he was perceived as a whistleblower, even though the fact that he wrote the letter to the head of the agency was known to his manager. Accordingly, we dismiss the appeal for lack of jurisdiction regarding these claims.

¶37    We also conclude that the appellant exhausted his remedies with OSC regarding his activity of distributing envelopes to patients so that they could complain about long wait times in the BTO, and he made a nonfrivolous allegation that he had a reasonable belief that this activity is protected activity under the WPEA.[7]  However, for the reasons set forth above, we find that the appellant failed to make a prima facie case that the agency refused his request to noncompetitively transfer him back to the VAMC from Florida, and did not select him for the MSA and Gardener positions, in retaliation for his activity protected under 5 U.S.C. § 2302(b)(9)(B).  Accordingly, we deny the appellant's request for corrective action under the WPEA as to these personnel actions.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

---

[7] In a footnote in the initial decision, the administrative judge ruled on the appellant's motion to compel the agency to produce copies of documents that he signed asking to be moved to Cochran.  ID at 4 n.1; *see* IAF, Tab 14.  She found, based on the agency's responses, that the agency had no documents responsive to the appellant's request. Because we do not need to reach the issue of whether the appellant's move to Cochran was voluntary, we need not determine whether the administrative judge's discovery ruling was an abuse of discretion.  *See Vaughn v. Department of the Treasury*, 119 M.S.P.R. 605, ¶ 15 (2013) (finding that an administrative judge has broad discretion in ruling on discovery matters and, absent an abuse of discretion, the Board will not find reversible error in such rulings).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal

Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:            _____
                                       William D. Spencer
                                       Clerk of the Board

Washington, D.C.