# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

RENEE NELSON,
              Appellant,

      v.

DEPARTMENT OF DEFENSE,
              Agency.

DOCKET NUMBER
DC-1221-21-0486-W-1

DATE:  March 20, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Renee Nelson</u>, Silver Spring, Maryland, pro se.

<u>Lauren S. Ruby</u>, Falls Church, Virginia, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

The appellant is employed as a GS-12 Program Analyst at the agency's National Museum of Health and Medicine (NMHM) in Silver Spring, Maryland. *Nelson v. Department of Defense*, MSPB Docket No. DC-1221-21-0486-W-1, Initial Appeal File (IAF), Tab 1 at 2. On September 19, 2020, she filed a whistleblower reprisal complaint with the Office of Special Counsel (OSC) alleging that the agency retaliated against her for her protected disclosures and activities. *Id.* at 54. In April 2021, OSC issued a final determination letter on that complaint, OSC complaint number MA-20-2763, and closed out its investigation. *Id.* at 21.

The appellant filed the instant IRA appeal and provided more than 1,000 pages of documents with her appeal. IAF, Tab 1. The administrative judge issued an order notifying the appellant of her jurisdictional burden and instructed her to file a concise statement detailing the elements of her claim, including a list of each alleged protected activity and personnel action. IAF, Tab 3 at 1-7. The appellant filed a response to the jurisdictional order and noted that OSC had issued another close-out letter in another complaint, OSC complaint number MA-21-1550. IAF, Tab 14 at 1, 11-12. The administrative judge subsequently issued an order separately docketing the appellant's claims related to that OSC complaint as a new appeal, reasoning that the two appeals should not be joined because they involved different protected activities and disclosures and different personnel actions. IAF, Tab 15; *see Nelson v. Department of Defense*, MSPB Docket No. DC-1221-22-0024-W-1, Initial Appeal File (0024 IAF), Tab 3 at 1.

After considering the appellant's jurisdictional pleadings, the administrative judge issued an initial decision concluding that the appellant failed to meet her burden of proving Board jurisdiction over the instant appeal. IAF, Tab 17, Initial Decision (ID) at 1-10. Specifically, he acknowledged that the appellant had filed a complaint with OSC and received a close-out letter advising her of her Board appeal rights. ID at 2-3; IAF, Tab 1 at 21-22. He also noted

that OSC's close-out letter identified that the appellant alleged she had been subjected to retaliation for protected whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) and protected activity under 5 U.S.C. § 2302(b)(9), including her filing of a prior Board IRA appeal in 2016 and contacting the agency's Office of the Inspector General (OIG). ID at 2-3. However, the administrative judge did not make any findings regarding whether she exhausted her administrative remedy with OSC regarding these claims. Instead, he concluded that OSC had declined to investigate the appellant's allegations of whistleblower retaliation because they were duplicative of issues that she raised her 2016 IRA appeal, and also declined to take corrective action in connection with the appellant's claims under section 2302(b)(9). ID at 3.

After reviewing the OSC close-out letter and the appellant's jurisdictional pleadings, the administrative judge implicitly concluded that the appellant nonfrivolously alleged that she engaged in protected activity under section 2302(b)(9) in connection with her prior IRA appeal and her contacts with the OIG. ID at 4, 7. Regarding potential personnel actions, the administrative judge analyzed the appellant's claim that she was subjected to a hostile work environment and acknowledged that the creation of a hostile work environment can constitute a personnel action in an IRA appeal. ID at 6. He nevertheless concluded that the appellant failed to nonfrivolously allege that the hostile work environment "took place on account of" her protected activity, and so she failed to meet her jurisdictional burden. ID at 4, 6-10. Consequently, he dismissed the appeal for lack of jurisdiction without holding the appellant's requested hearing. ID at 1-2, 10.

The appellant filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response to the petition for review and the appellant has filed a reply. PFR File, Tabs 3-4.

**DISCUSSION OF ARGUMENTS ON REVIEW**

On review, the appellant argues that the administrative judge erred by obligating her to prove more than was required and by separately adjudicating her three pending IRA appeals, thereby diminishing the strength of her claims. PFR File, Tab 1 at 1-8. She also provides a chronological timeline of the events underlying each of her three IRA appeals, detailing her numerous purported disclosures, activities, and retaliatory personnel actions. *Id.* at 12-30. The appellant also identifies a number of statutory and regulatory provisions that she appears to believe the agency violated. *Id.* at 9-12. Finally, she argues that the administrative judge abused his discretion and exhibited bias by staying discovery, thus preventing her from obtaining information related to her case. *Id.* at 6-7.

The administrative judge did not err by declining to join the appellant's other pending Board appeals.

The Board is authorized to join two or more appeals filed by the same appellant and hear and decide them concurrently if it determines that joinder would result in the appeals being processed more quickly and "would not adversely affect any party. *McCarthy v. International Boundary and Water Commission*, 116 M.S.P.R. 594, ¶ 10 (2011) (quoting 5 U.S.C. § 7701(f)(2)), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012); 5 C.F.R. § 1201.36(a)(2), (b). The decision whether to join appeals is a matter of the sound discretion of the administrative judge in accordance with this guidance. *McCarthy*, 116 M.S.P.R. 594, ¶ 10.

Regarding the appellant's argument that her three pending Board appeals should have been considered together and that the administrative judge erred by declining to join her appeals, the first of her three appeals, MSPB Docket No. PH-1221-16-0453-W-1, was filed in September 2016, the initial decision was issued in 2017, four years prior to the appellant filing her second and third appeals, and a separate Board decision has already been issued in that appeal.

PFR File, Tab 1 at 1-8. Additionally, the responding agency in that appeal is the Department of the Army, while the Department of Defense (DoD) is the responding agency in this appeal and the third appeal, MSPB Docket No. DC-1221-22-0024-W-1. Thus, the first appeal was correctly adjudicated separately.

With respect to the instant appeal and the 0024 appeal, as the administrative judge noted in the order separately docketing the instant appeal, the claims contained in this appeal concern separate allegations of wrongdoing primarily related to the appellant's allegation that she was subjected to a hostile work environment in retaliation for her first Board appeal and for cooperating with the agency's OIG, while the 0024 appeal concerns her claim that she was subjected to a background investigation in retaliation for her disclosures concerning the agency's collection of employee COVID-19 vaccination status information. IAF, Tab 15. The appellant also filed separate complaints with the Office of Special Counsel (OSC) and received separate OSC close-out letters concerning each of these claims. *Compare* IAF, Tab 1 at 21-22, 39, 54-55, *with* 0024 IAF, Tab 1 at 14, Tab 10 at 69-72.

Further, the record reflects that although the appellant identified the allegations that later became the basis for the 0024 appeal in her response to OSC's close-out letter in the instant appeal, OSC's investigating attorneys noted that it appeared the appellant was attempting to raise a new whistleblower retaliation claim at that time and informed her on two separate occasions that she could file a new complaint with OSC if she wished to separately pursue that claim. IAF, Tab 1 at 127, 133-34. Sometime after May 4, 2021, and prior to June 10, 2021, the appellant filed a new complaint, OSC complaint number MA-21-1550, which served as the basis for the 0024 appeal. *Id*. at 133-34; 0024 IAF, Tab 1 at 14-15. Because we agree that the two appeals concern distinct claims that the appellant separately raised and exhausted with OSC, we

do not find that the administrative judge abused his discretion in separately adjudicating the 0024 appeal and the instant appeal.  ID at 2 n.1.

The appellant exhausted her administrative remedy with OSC.

To establish jurisdiction in an IRA appeal, an appellant must show by preponderant evidence that she exhausted her remedies before OSC and make nonfrivolous allegations of the following:  (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).  *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 8 (2016), *overruled on other grounds by Requena v. Department of Homeland Security*, 2022 MSPB 39.  A nonfrivolous allegation is an allegation of "sufficient factual matter, accepted as true, to state a claim that is plausible on its face."  *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020); *see* 5 C.F.R. § 1201.4(s) (defining a nonfrivolous allegation as an assertion that, if proven, could establish the matter at issue).  Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 6 (2022).

The Board generally first considers whether the appellant established that she exhausted her administrative remedy with OSC before turning to consider whether her claims constitute nonfrivolous allegations of protected disclosures or protected activities.  *See Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶¶ 4-5 (2014) (stating that the first element to Board jurisdiction over an IRA appeal is exhaustion by the appellant of her administrative remedies before OSC and that the next requirement is that she nonfrivolously allege that she made a protected disclosure or engaged in protected activity).

To satisfy the exhaustion requirement of 5 U.S.C. § 1214(a)(3), an appellant must have provided OSC with a sufficient basis to pursue an

investigation into her allegations of whistleblower reprisal. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. An appellant may demonstrate exhaustion through her initial OSC complaint or correspondence with OSC. *Id.,* ¶ 11 & n.7. She need only show that she advised OSC of the "core of [her] retaliation claim," thus giving "OSC sufficient basis to pursue an investigation." *Briley v. National Archives and Records Administration*, 236 F.3d 1373, 1377-78 (Fed. Cir. 2001); *see Chambers*, 2022 MSPB 8, ¶ 10 (explaining that the appellant may give a more detailed account of his whistleblowing activities before the Board than he did to OSC (citing *Briley*, 236 F.3d at 1378)). The purpose of requiring an appellant to exhaust her remedies with OSC before filing an IRA appeal with the Board is to give OSC "the opportunity to take corrective action before involving the Board in the case." *Id.* Thus, "the Board's jurisdiction over an IRA appeal . . . is . . . limited to those issues that have been previously raised with OSC." *Id.* Accordingly, we will first consider whether the appellant exhausted her administrative remedy with OSC and, if so, then consider whether she made nonfrivolous allegations that she made a protected disclosure or engaged in a protected activity that was a contributing factor to an agency personnel action. *See Salerno*, 123 M.S.P.R. 230, ¶ 5.

The administrative judge did not make specific findings concerning which of the appellant's protected disclosures or activities and personnel actions she exhausted with OSC, and instead concluded that she failed to nonfrivolously allege that she was subjected to a hostile work environment based on any potential protected activity. ID at 1-2, 10. In so doing, the administrative judge identified the appellant's protected disclosures or activities under 5 U.S.C. § 2302(b)(9) as her filing of several OIG complaints, a prior OSC complaint, and her 2016 Board IRA appeal. ID at 7.

Although the appellant did not set forth a concise explanation of her purported disclosures and activities as requested by the administrative judge, she did provide detailed narrative statements and timelines identifying her various

disclosures and activities.  IAF, Tab 1 at 8-19, Tab 4 at 3-12, Tab 7 at 1-10.  She also indicated that she provided specific allegations and supporting documentation to OSC, and her correspondence with OSC included in the record reflects that she provided supporting information to OSC.  IAF, Tab 1 at 46-53, 97, Tab 4 at 7, Tab 7 at 9.

Based on our review of the appellant's lengthy initial appeal, we find that she exhausted the following alleged protected disclosures and activities with OSC:  (1) in November 2015 and January 2017, she filed DoD OIG complaints, which were referred to the Department of the Army Inspector General regarding, among other things, alleged inaccurate Army Regulation 15-6 investigation results, destruction of evidence, interference with her equal employment opportunity (EEO) complaint process, being subjected to repeated harassment and retaliation, the U.S. Army Medical Research and Material Command's (MRMC) refusal to investigate her complaints, being denied evidence demonstrating that her agency shared her private protected employee information and private health information with individuals without a need to know, and the agency sabotaging her Office of Workers' Compensation Programs (OWCP) worker's compensation claim, IAF, Tab 1 at 463-65, 616-17, 855-58; (2) she filed a complaint with OSC alleging whistleblower reprisal in April 2015, *id.* at 23; *Nelson v. Department of the Army*, MSPB Docket No. PH-1221-16-0453-W-1, Initial Appeal File (0453 IAF), Tab 1 at 10; (3) she filed an IRA appeal with the Board in July 2016, IAF, Tab 1 at 47-48, 54, 68; (4) in 2016-2018 and 2019-2020 she submitted Freedom of Information Act (FOIA) requests seeking information regarding potential violations of the Federal Acquisition Regulations (FAR) and Joint Ethics Regulations (JER) by agency contractors, *id.* at 104; and (5) on March 28, 2017, she filed a complaint with the OIG for the Defense Health Agency (DHA) alleging harassment and retaliation by her supervisor for her prior ongoing whistleblowing activity, *id.* at 62-69.  The appellant certified to the truthfulness of the statements in her initial appeal.  IAF, Tab 1 at 7; 0453 IAF, Tab 1 at 6.

Accordingly, we find that the appellant established by preponderant evidence that she exhausted her administrative remedy with OSC regarding these claims.

As with the appellant's alleged protected disclosures and activities, the administrative judge did not make a specific finding regarding whether the appellant exhausted with OSC any of the challenged personnel actions. The administrative judge determined that the only challenged personnel action was the appellant's claim that she was subjected to a hostile work environment, referring to OSC's close out letter. ID at 1-4. In describing the appellant's hostile work environment claim, the administrative judge characterized the claim as encompassing "general and sweeping" allegations of wrongdoing, including as examples, her allegations that agency officials denied her access to training, falsified and withheld information regarding training, attempted to access private medical and personal information, subjected her to unsubstantiated complaints, and engaged in a host of other wrongdoing. ID at 8-9.

Although many of these alleged agency actions could be characterized as aspects of her hostile work environment claim, the appellant's jurisdictional pleadings also include additional allegations that could, alone, constitute personnel actions. Based on our review of the appellant's jurisdictional pleadings, we find that she also exhausted the following alleged personnel actions with OSC: (1) beginning in 2014 or 2015 through the present, agency officials, including the appellant's supervisor and other agency managers and Office of General Counsel (OGC) attorneys responsible for representing the agency in her prior IRA appeal, created a hostile work environment by failing to act or intervene on her behalf, conducting unlawful or incomplete investigations, requiring her to complete an unnecessary financial disclosure form, sabotaging her complaints, improperly attempting to obtain her medical records and OWCP information, and failing to properly process her OWCP injury claims, among other things, IAF, Tab 1 at 48, 54, 434, 615, Tab 4 at 7-9; PFR File, Tab 1 at 15; (2) she was denied a 2014 annual performance appraisal or bonus after NMHM

officials stripped her of her work duties without an alternative duty assignment or position description, IAF, Tab 1 at 350-56, 675, Tab 4 at 6; (3) her supervisor issued her a verbal and written reprimand on February 24, 2014, IAF, Tab 1 at 360, 434; (4) she received downgraded 2015, 2016, and 2017 performance evaluations, IAF, Tab 1 at 9, 350, 411-12, 573; PFR File, Tab 1 at 15-17; (5) from March 28 through July 2017, her supervisor threatened her with discipline if she did not violate ethics regulations, IAF, Tab 4 at 7-8; PFR File, Tab 1 at 16; (6) she was denied a requested reasonable accommodation of telework for her February 24, 2014 workplace injury on various occasions, including in May and June 2014, March 28 through July 2017, and February 2020, IAF, Tab 1 at 48, Tab 4 at 7-8; and (7) at some point between March 28 and July 2017, she was threatened with discipline for participating in mandatory teamwork and workplace bullying training workshops, IAF, Tab 1 at 978-80, Tab 4 at 7-8. Consequently, we conclude that the appellant exhausted the above claims with OSC.

<u>The appellant nonfrivolously alleged that she engaged in protected activities and was subjected to covered personnel actions.</u>

*The appellant nonfrivolously alleged that she engaged in protected activities under 5 U.S.C. § 2302(b)(9).*

Under 5 U.S.C. § 2302(b)(9)(C), it is a prohibited personnel practice to take an action against an employee because that employee "disclos[ed] information to the Inspector General . . . of an agency, or the Special Counsel, in accordance with applicable provisions of law." As set forth in greater detail above, the administrative judge correctly found, and the parties do not dispute on review, that the appellant engaged in protected activity under 5 U.S.C. § 2302(b)(9) with respect to her 2015 through 2017 DoD and DHA OIG complaints and her 2015 OSC complaint. ID at 7; *supra* pp. 7-8; *see Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 62 (clarifying that, under 5 U.S.C. § 2302(b)(9)(C), any disclosure of information to OSC is protected, regardless of the content).

Further, it is undisputed that the appellant alleged whistleblower reprisal in her 2016 Board IRA appeal, and so that prior appeal constitutes a protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), which includes the exercise of any appeal, complaint, or grievance right with regard to remedying a claim of whistleblower reprisal. *Nelson v. Department of the Army*, PH-1221-16-0453-W-1, Initial Decision at 1-6 (Mar. 12, 2024); 0453 IAF, Tab 15; *see Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 10 (2016) (explaining that a claim of retaliation for filing a prior Board appeal that included a claim of whistleblower reprisal was a protected activity under 5 U.S.C. § 2302(b)(9)(A)(i)); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013) (recognizing that the WPEA expanded the Board's IRA jurisdiction to include reprisal for activity under 5 U.S.C. § 2302(b)(A)(i)).

Regarding the appellant's filing of FOIA requests for information concerning potential FAR/JER violations by agency contractors during the period from 2016 through 2018 and 2019-2020, we conclude that this is not a protected disclosure under 5 U.S.C. § 2302(b)(8). While the Board has held that a disclosure of a violation of FOIA may constitute a protected disclosure under 5 U.S.C. § 2302(b)(8), the appellant has not pointed to any Board precedent, and we are aware of none, finding that the mere act of filing a request for information under FOIA, without more, constitutes a protected disclosure under 5 U.S.C. § 2302(b)(8), even if her decision to do so was based on a personal belief that the request would produce evidence of illegality. *Cf. Bump v. Department of the Interior*, 64 M.S.P.R. 326, 332 (1994) (concluding that the appellant nonfrivolously alleged that he made a protected disclosure based on his specific allegations that the agency was violating FOIA).

The appellant's filing of a FOIA request also does not constitute protected activity under 5 U.S.C. § 2302(b)(9) because a request for information under FOIA is not the "exercise of any appeal, complaint, or grievance right," and does not concern "remedying a violation of [5 U.S.C. § 2302(b)(8)]." *See* 5 U.S.C.

§ 2302(b)(9)(A)(i); *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 18 (2016) (finding that the appellant had not exercised any appeal, complaint, or grievance right as described in section 2302(b)(9) when the appellant's actions did not constitute an initial step toward taking legal action against an employer for a perceived violation of employment rights); *cf. Mattison v. Department of Veterans Affairs*, 123 M.S.P.R. 492, ¶¶ 7-8 (2016) (finding that the appellant's claim of retaliation for filing a FOIA appeal in which he did not seek to remedy whistleblower reprisal arose under 5 U.S.C. § 2302(b)(9)(A)(ii)). Accordingly, we find that the appellant nonfrivolously alleged that she engaged in protected activity under 5 U.S.C. § 2302(b)(9) in connection with the following activities: (1) her November 2015 and January 2017 DoD OIG complaints; (2) her 2015 OSC complaint alleging whistleblower reprisal; (3) her July 2016 Board IRA appeal; and (5) her March 2017 DHA OIG complaint.

> *The appellant nonfrivolously alleged that she was subjected to personnel actions under 5 U.S.C. § 2302(a).*

As previously noted, the appellant exhausted with OSC her claims that the agency took the following personnel actions against her: (1) she was subjected to a hostile work environment caused by numerous agency officials during the period from 2014 or 2015 through the present; (2) she was denied a 2014 performance appraisal and a bonus; (3) she received a verbal and written reprimand in February 2014; (4) she received reduced 2015, 2016, and 2017 performance appraisals; (5) her supervisor threatened her with discipline in early 2017 in connection with her compliance with ethics regulations; (6) her telework reasonable accommodation request was denied several times over the period from May 2014 through February 2020; and (7) she was separately threatened with discipline in early 2017 in connection with her participation in training workshops. *Supra* p. 9.

Regarding actions (2) and (4), a "performance appraisal" is a covered personnel action. 5 U.S.C. § 2302(a)(2)(A)(viii); *Rumsey v. Department of*

*Justice*, 120 M.S.P.R. 259, ¶ 16 (2013) (clarifying that a "performance appraisal" constitutes a personnel action for the purposes of an IRA appeal, irrespective of whether the appraisal was tangibly lower than the prior year). Similarly, a denial of a performance-based award can constitute a personnel action. *See* 5 U.S.C. § 2302(a)(2)(A)(ix) (defining a personnel action to include a "decision concerning pay, benefits, or awards"); *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 14 n.5 (2015) (finding that the agency's decision not to give the appellant a 40-hour time-off award constituted a personnel action); *Hagen v. Department of Transportation*, 103 M.S.P.R. 595, ¶ 13 (2006) (holding that the denial of a cash award is a personnel action). Regarding action (3), a written letter of reprimand is also a personnel action within the meaning of the whistleblower reprisal statutes. *Horton v. Department of Veterans Affairs*, 106 M.S.P.R. 234, ¶ 18 (2007).

With respect to actions (5) and (7), a threatened action can constitute a personnel action under the Whistleblower Protection Enhancement Act of 2012 (WPEA) when it warns of future discipline. 5 U.S.C. § 2302(b)(8)-(9) (providing that a threat to take a personnel action because of a protected activity or disclosure is prohibited); *see Rebstock Consolidation v. Department of Homeland Security*, 122 M.S.P.R. 661, ¶ 10 (2015) (explaining that the term "threaten" in 5 U.S.C. § 2302 should be interpreted broadly and can encompass warnings of possible future discipline); *Campo v. Department of the Army*, 93 M.S.P.R. 1, ¶¶ 7-8 (2002) (finding that a memorandum of warning that included the threat of disciplinary action for any further misconduct was a personnel action).

Regarding action (6), a denial of reasonable accommodation is not separately enumerated as a personnel action under 5 U.S.C. § 2302(a)(2)(A), and the appellant has not otherwise explained why she believes that it fits the definition of "personnel action" under that subparagraph. *See Reid v. Merit Systems Protection Board*, 508 F.3d 674, 679 (Fed. Cir. 2007) (declining to consider a conclusory allegation of a denial of reasonable accommodation for a

disability as a "personnel action"). Nevertheless, the cancellation of a telework agreement can constitute a personnel action to the extent that it represents a significant change in an employee's duties, responsibilities, and working conditions. *Rumsey*, 120 M.S.P.R. 259, ¶ 23. Accordingly, we will consider the appellant's allegation that she was denied a reasonable accommodation request, which impacted her ability to telework, as a part of her allegation that she was subjected to a significant change in duties, responsibilities, and working conditions, discussed in greater detail below, but not as a standalone claim that she was subjected to a personnel action under 5 U.S.C. § 2302(a). *See Covarrubias v. Social Security Administration*, 113 M.S.P.R. 583, ¶ 15 n.4 (2010) (finding a nonfrivolous allegation of a significant change in working conditions based, in part, on disability discrimination), *overruled on other grounds by Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 12 n.5 (2014).

<u>The appellant made a nonfrivolous allegation that her protected activities were a contributing factor in at least one personnel action.</u>

As set forth above, to establish the Board's jurisdiction over her claims, the appellant must nonfrivolously allege that a protected disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 8, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023); *Salerno*, 123 M.S.P.R. 230, ¶ 5. One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Salerno*, 123 M.S.P.R. 230, ¶ 13. However, the Board has held that if an administrative judge determines that an appellant failed to satisfy the

knowledge/timing test, he shall consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed towards the official taking the action, or whether these individuals had a desire or motive to retaliate against the appellant. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012).

In the initial decision, the administrative judge appears to have found that the appellant failed to nonfrivolously allege contributing factor, in part, because she failed to specify how the individuals responsible for the wrongful actions against her were aware of her protected activity or why she believed they took the actions with animus towards her for her protected activities. ID at 7, 9. We agree with the administrative judge's observation that many of the appellant's claims lack sufficient specificity to support a nonfrivolous allegation. While a nonfrivolous allegation is not a stringent standard, the appellant's general assertion that NMHM, DHA, and MRMC leadership and staff, and officials from other agencies all had knowledge of her protected disclosures and activities prior to taking the challenged personnel actions, without any specific allegations about how they became aware of her disclosures or activities, is vague and conclusory and insufficient to meet the knowledge prong of the knowledge/timing test. IAF, Tab 4 at 4-6, Tab 7 at 2. We turn now to address each purported personnel action to determine whether the appellant nonfrivolously alleged that her protected disclosures or activities were contributing factors in each of the personnel actions.

> *The appellant failed to nonfrivolously allege contributing factor with respect to personnel actions 2, 3, 5, and 7.*

Regarding personnel action (2), the appellant alleged that on February 24 and 28, 2014, she was moved to another department and "stripped" of her work duties without an alternative duty assignment or a position description for 6 months, resulting in her not being issued a performance appraisal or bonus on

an unspecified date in 2014. IAF, Tab 1 at 350-56, 675, Tab 4 at 6. Although the date range for the 2014 performance period and the date the appellant alleges that she was denied a performance appraisal and a bonus are not specified, the 2013 performance year ran from November 2012 through November 2013 and the appellant received her annual appraisal bonus for that year on December 11, 2013. IAF, Tab 1 at 412, 675. Before being moved to a different department, during the period from 2006 through 2013, the appellant regularly received her annual performance appraisal bonuses in the summer or fall, during the months from August through December. *Id.* at 412. Assuming that, consistent with previous practice, the appellant's 2014 appraisal should have been issued by the end of December 2014 at the latest, all of the appellant's protected activities occurred during the period from April 2015 through 2017, and so this purported personnel action took place prior to any of the alleged protected activities at issue in this appeal. Accordingly, the appellant's protected activities could not have been a contributing factor in the agency's decision to take this personnel action. *See El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 10 (2015) (explaining that because the subject personnel action predated the disclosure, the disclosure could not have contributed to the personnel action), *aff'd per curiam*, 663 F. App'x 921 (Fed. Cir. 2016); *Davis v. Department of Defense*, 106 M.S.P.R. 560, ¶ 12 (2007) (same), *aff'd*, 278 F. App'x 1009 (Fed. Cir. 2008). The same is true of personnel action (3), which concerns the appellant's claim that her supervisor issued her a verbal and written reprimand on February 24, 2014. IAF, Tab 1 at 360, 434. Consequently, we conclude that the appellant failed to nonfrivolously allege contributing factor in connection with these personnel actions.

Regarding personnel actions (5) and (7), the appellant generally alleged that her "new duty station supervisor" threatened her with discipline if she did not violate FAR/JER ethics regulations, and other unspecified individuals threatened her with punishment for participating in teamwork and workplace bullying training workshops during the period from March 28 through July 2017. IAF,

Tab 1 at 978-80, Tab 4 at 7-8. However, the appellant has not specifically identified who threatened her, whether those individuals had knowledge of any of her protected activities, whether her protected activities were personally directed at them, or whether the individuals would have had a motive to retaliate against her. These claims amount to little more than conclusory allegations of wrongdoing insufficient to satisfy the contributing factor criterion even at the nonfrivolous allegation stage. *See Chambers*, 2022 MSPB 8, ¶ 18 (finding that conclusory and unsubstantiated speculation are insufficient to amount to a nonfrivolous allegation of a retaliatory motive) (citing *Sherman v. Department of Homeland Security*, 122 M.S.P.R. 644, ¶ 9 n.5 (2015); *Jones v. Department of the Treasury,* 99 M.S.P.R. 479, ¶ 8 (2005)). Accordingly, we conclude that the appellant failed to nonfrivolously allege that her protected activities were a contributing factor in the agency's decision to take these actions.

> *The appellant nonfrivolously alleged contributing factor with respect to personnel action (4).*

The appellant directed some of the complaints contained in her July 2016 IRA appeal and underlying April 2015 OSC complaint at the same supervisor who was responsible for issuing her July 2015 and June 2016 performance appraisals. *Compare* 0453 IAF, Tab 1 at 12 (identifying the appellant's supervisor, referred to here as Supervisor A, as one of the retaliating officials), *with* IAF, Tab 1 at 412 (identifying that same individual as the official who issued the appellant's 2015 and 2016 annual appraisals). Additionally, although the appellant did not personally direct her protected disclosures or activities toward a supervisor (referred to here as Supervisor B) who was responsible for issuing her June 2017 annual appraisal, she stated in her jurisdictional pleadings that she believed that this supervisor was a "scapegoat" and that it was the NMHM Director—one of the subjects of her 2015 OSC complaint and 2016 IRA appeal—who directed "all decision and actions that take place at the NMHM." IAF, Tab 1 at 112, 412

(identifying Supervisor B as the official who issued the appellant's 2017 annual appraisal).

An appellant may establish that a protected activity was a contributing factor in a personnel action by proving that the official taking the action had constructive knowledge of the protected disclosure, i.e., that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 15 (2016). Consequently, to the extent that the appellant is alleging that the NMHM Director was aware of her protected activities and influenced Supervisor B to provide her with a reduced 2017 annual appraisal, we find that fact, coupled with the fact that the reduced 2015, 2016, and 2017 appraisals occurred within 1 to 2 years of the appellant's OSC complaint and IRA Board appeal, is sufficient to meet the contributing factor criterion at the jurisdictional stage. *See Skarada*, 2022 MSPB 17, ¶ 19 (observing that a personnel action taken within approximately 1 to 2 years of the appellant's disclosure satisfies the contributing factor knowledge/timing test); *Mastrullo*, 123 M.S.P.R. 110, ¶ 21 (same). Based on the foregoing, we conclude that the appellant nonfrivolously alleged that her 2015 OSC complaint and 2016 Board IRA appeal were a contributing factor in the agency's decision to reduce her 2015, 2016, and 2017 performance appraisals.

<u>We remand the appeal for the administrative judge to make additional jurisdictional findings and to subsequently provide the appellant with her requested hearing on the merits of her appeal.</u>

Finally, we turn now to consider an issue thus far left unaddressed, personnel action (1), which concerns the appellant's claim that she was subjected to a hostile work environment. As previously noted, the administrative judge concluded that the appellant failed to nonfrivolously allege that she was subjected to a hostile work environment based on the litany of actions she alleged were taken against her over the course of several years, reasoning that the appellant

had failed to link the purportedly retaliatory actions to any specific protected activity, and so she failed to establish that the hostile work environment was created "on account of" her prior protected activities. ID at 7-8. We disagree and instead conclude that the appellant has alleged wrongful actions by the agency in connection with her hostile work environment claim that, individually or collectively, rise to the level of a significant change in her duties or working conditions sufficient to constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii) for the purposes of an IRA appeal.

After the administrative judge issued the decision in this case, the Board clarified that the creation of a hostile work environment may constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii) to the extent that it represents a significant change in duties, responsibilities, or working conditions. *Skarada,* 2022 MSPB 17, ¶ 16. To meet this standard, an agency's actions must, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities. *Id.* In determining whether a hostile work environment is present, the Board will consider the totality of the circumstances, including agency actions that may not individually rise to the level of a personnel action. *Id.,* ¶ 18. In *Skarada,* the Board found that the appellant in that case nonfrivolously alleged he was subjected to a personnel action when the agency excluded him from meetings and conversations, subjected him to multiple investigations, accused him of fabricating data violating the Privacy Act, refused his request for a review of his position for possible upgrade, yelled at him on three occasions, and failed to provide him the support and guidance needed to successfully perform his duties. *Id.*

In this case, the appellant alleged a number of wrongful actions by the agency that she claims amounted to an ongoing hostile work environment including, for example, that DHA OIG officials failed to intervene on her behalf while investigating her complaint, specific named supervisors, coworkers, and

OGC attorneys responsible for representing the agency in her prior IRA appeal denied her access to FAR and JER Contracting Officer Representative (COR) training necessary to perform her job duties, falsified and withheld information related to corrective training requirements, sabotaged or failed to process her complaints in order to conceal violations of law, forced her to file unnecessary financial disclosure forms, denied her the opportunity to make corrections to her personnel file and her OWCP work injury claims, attempted to improperly obtain her medical records and OWCP information, and "continually subjected [her] to unsubstantiated, and unfounded false complaints and employee character assassinations" and investigations. IAF, Tab 1 at 25-36, 48, 54, 434, 615, Tab 4 at 7-10; PFR File, Tab 1 at 15. Further, as we previously found, although the appellant's allegation that several agency supervisors, including the NMHM Director, denied her the reasonable accommodation of telework during the period from March through July 2017 and October 2019 through February 2020 is not a separate personnel action, we have considered it in the context of her allegation that she was subjected to a significant change in duties, responsibilities, and working conditions. *See supra* pp. 13-14.

Additionally, with her appeal the appellant submitted a copy of the DHA OIG's investigative finding that, from April 2016 to June 2017, an unnamed supervisor subjected her to a hostile work environment. IAF, Tab 1 at 62, 75. The appellant provided documentation alleging that although the investigation was limited to her supervisor, who she claimed served as a "scapegoat" for the agency and was terminated as a result of the findings, she also complained to the OIG that the actions were taken "with the full knowledge, approval, and direction of the NMHM Director" who was previously named in her 2016 IRA appeal and who was the true harasser. *Id.* at 112; PFR File, Tab 1 at 19. The administrative judge discounted the OIG findings, in part, because the OIG investigation covered only harassment beginning in April 2016 and the appellant's first IRA appeal was filed in August 2016; however, the appellant also engaged in earlier protected

activities, including by filing OSC and DoD OIG complaints in 2015. ID at 8; IAF, Tab 1 at 65-69, 119.

Based on the foregoing, we find that the appellant's contentions regarding her hostile work environment claim, if accepted as true, collectively amount to a nonfrivolous allegation of a significant change in working conditions sufficient to rise to the level of a personnel action. *See Skarada*, 2022 MSPB 17, ¶ 18; *see also Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 22 (2012) (finding that an agency's failure to process an appellant's EEO complaint and OWCP claims in its usual manner may be broadly construed as a significant change in working conditions, which would be a personnel action); *Covarrubias*, 113 M.S.P.R. 583, ¶¶ 8, 15 n.4 (finding that the appellant made a nonfrivolous allegation of a significant change in working conditions when she alleged, among other things, that her supervisors harassed her and closely monitored her whereabouts, to include following her to the bathroom).

Assessing whether the appellant has nonfrivolously alleged that her protected activities were a contributing factor in the creation of the hostile work environment, however, is a much more difficult task. As the administrative judge correctly noted, the appellant's jurisdictional pleadings addressing the nature of her hostile work environment claim are voluminous, span multiple years, identify dozens of agency officials from different agency subcomponents, and are not organized in a manner conducive to resolving the specific questions of which agency officials knew what, and when. The Board has held that it is not required to pore through the record in order to construe or make sense of pleadings filed by a party, and an appellant's submissions that lack clarity run the risk of being found to have failed to meet the requisite burden of proof. *See, e.g., Keefer v. Department of Agriculture*, 92 M.S.P.R. 476, ¶ 18 n.2 (2002); *Luecht v. Department of the Navy*, 87 M.S.P.R. 297, ¶ 8 (2000).

As set forth above, we have concluded that the administrative judge viewed the appellant's jurisdictional pleadings too narrowly in determining that the only

purported personnel action that she raised and exhausted with OSC was her claim that she was subjected to a hostile work environment sufficient to rise to the level of a personnel action under 5 U.S.C. §2302(a)(2)(A)(xii). Instead, we have addressed additional personnel actions the appellant identified in her submissions to OSC and have now concluded that she nonfrivolously alleged that her 2015 OSC complaint and 2016 Board IRA appeal were a contributing factor in the agency's decision to reduce her 2015, 2016, and 2017 performance appraisals, thereby satisfying her jurisdictional burden as to those claims. *Supra* pp. 18; *see Skarada*, 2022 MSPB 17, ¶ 13 (explaining that, in cases when an appellant has alleged multiple personnel actions, the Board has jurisdiction over the appeal when the appellant exhausts her administrative remedy and makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one alleged protected disclosure).

The Board's ordinary practice after finding that an appellant met her jurisdictional burden in an IRA appeal is to remand the appeal with an instruction to the administrative judge to issue a decision based on the written submissions, or, when a hearing was requested, to provide the appellant with her requested hearing on the merits of her appeal. *See Spencer v. Department of the Navy*, 327 F.3d 1354, 1356 (Fed. Cir. 2003); *Shope v. Department of the Navy*, 106 M.S.P.R. 590, ¶ 5 (2007). In certain circumstances, however, the Board has remanded the appeal for the administrative judge to further develop the record on the issue of jurisdiction. *See Wilcox v. International Boundary and Water Commission*, 103 M.S.P.R. 73, ¶¶ 15-16; *Wells v. Department of Homeland Security*, 102 M.S.P.R. 36, ¶¶ 4, 9-10 (2006).

Given the extensive nature of the appellant's allegations underlying her hostile work environment claim and the fact that the administrative judge issued the initial decision in this case without the benefit of our decision in *Skarada*, we remand the appeal for the administrative judge to make new findings on the issue of whether the appellant can establish that her protected activities were a

contributing factor in the creation of a hostile work environment that constituted a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii). On remand, the administrative judge may permit the parties to supplement the record on this question. In so doing, the administrative judge may instruct the appellant to provide detailed submissions identifying, with specificity, how each allegedly retaliating official was responsible for creating a hostile work environment, and whether and how each official was aware of the appellant's protected activities. *See Keefer*, 92 M.S.P.R. 476, ¶ 18 n.2 (cautioning that an appellant who fails to articulate his claims with reasonable clarity and precision risks being found to have failed to meet his burden).

After supplementing the record on this issue, the administrative judge should then make a new jurisdictional determination that incorporates the findings on jurisdiction contained in this order, and then provide the appellant with her requested hearing on the merits of her appeal. If the appellant proves by preponderant evidence that her protected activities were a contributing factor in one or more of the personnel actions, the administrative judge shall order corrective action unless the agency proves by clear and convincing evidence that

it would have taken the same actions absent the protected activity.[2]  *Salerno*, 123 M.S.P.R. 230, ¶ 5; 5 U.S.C. § 1221(e).

## ORDER

For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order. To the extent necessary, the administrative judge should permit the parties to supplement the record with additional argument, evidence, and testimony before proceeding to a hearing on the merits of the appellant's IRA appeal.

Gina K. Grippando

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.

_____

[2] We find no merit to the appellant's argument that the administrative judge abused his discretion and was biased against her and in favor of the agency because he issued a stay on discovery before issuing his jurisdictional finding.  PFR File, Tab 1 at 6-7.  An administrative judge has broad discretion to regulate the proceedings before him, including the authority to rule on discovery motions, and absent an abuse of discretion, the Board will not reverse an administrative judge's discovery related rulings.  *Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶ 16 (2016); *Defense Intelligence Agency v. Department of Defense*, 122 M.S.P.R. 444, ¶ 16 (2015).  Additionally, an appellant is not entitled to discovery in an IRA appeal if she fails to raise a nonfrivolous allegation of Board jurisdiction.  *See Sobczak v. Environmental Protection Agency*, 64 M.S.P.R. 118, 122 (1994) (stating that an appellant is entitled to discovery in an IRA appeal only when he sets forth nonfrivolous jurisdictional allegations).  Further, there is a presumption of honesty and integrity on the part of administrative judges that can only be overcome by a substantial showing of personal bias, and the Board will not infer bias based on an administrative judge's case-related rulings; a party's disagreement with an administrative judge's evidentiary rulings is insufficient to show bias.  *Vaughn v. Department of the Treasury*, 119 M.S.P.R. 605, ¶ 18 (2013); *Diggs v. Department of Housing and Urban Development*, 114 M.S.P.R. 464, ¶ 9 (2010).  Although we have now concluded that the appellant nonfrivolously alleged Board jurisdiction over her IRA appeal, we still find that the appellant's conclusory assertion of bias, unsupported by any objective evidence, is insufficient to meet this high standard.